Harold W. Henricks et al., Plaintiffs-Appellees, v. S. E.
Bowles as Trustee Under Trust Agreement Dated
September 7, 1955 and Known as Trust No. 546,
Defendant-Appellant.

Gen. No. 47,474.

First District, Third Division.
December 31, 1958.
Rehearing denied February 13, 1959.
Released for publication February 13, 1959.

Haskins, Maguire & Haskins, of Chicago (Robert E. Haskins, C. W. Eckert and Rolland Franzen, of counsel) for appellant.

Edward F. O'Toole and Frank J. Smith, of Chicago, for appellees.

JUSTICE BURKE delivered the opinion of the court.

Plaintiffs filed a claim for an injunction to restrain the defendant from constructing a gasoline service station. A Master in Chancery recommended that the complaint be dismissed. The chancellor sustained exceptions to the Master's report and entered a decree permanently enjoining the defendant from constructing a gasoline service station on the premises. The defendant appeals.

The unrecorded subdivision in which the lots of the parties are located was platted by the original subdivider in 1941 into 32 lots. Every lot was conveyed by the subdivider, subject to identical restrictive covenants. Twenty-six of the lots have been improved by single-family dwellings. The remaining six lots, including that of the defendant, are unimproved. This rectangular tract in Elk Grove Township is bounded on the east by Mount Prospect Road and on the north by Algonquin Road. In 1955 the defendant purchased a lot located at the northeast corner of the subdivision, adjoining Mount Prospect and Algonquin Roads. She then leased the lot to Sinclair Refining Company, obtained a permit for construction of a gasoline service station and began excavation for that purpose. She had knowledge of the restrictions when she purchased the land.

 The defendant urges that the purported restrictions are ambiguous and contradictory and, there-

150

fore, unenforceable. Restrictive covenants are strictly construed in favor of the full and unlimited legitimate use of property and, where there is any doubt, the matter must be resolved in favor of natural rights and against restrictions. Boylston v. Holmes, 276 Ill. 279; Eckhart v. Irons, 128 Ill. 568; Leverich v. Roy, 338 Ill. App. 248; Staley v. Mears, 13 Ill.App.2d 451. In view of the foregoing rule, the defendant discusses the purported restrictions in the instant case and concludes that they are replete with doubts and that it is impossible to determine how many or what type of buildings were contemplated by the grantor. Plaintiffs argue that the restrictive covenants are clear, valid and enforceable. The law is well settled that a restriction or covenant in a deed relating to the manner of use of land may be enforced against the original grantee's successors when it can be shown expressly or by fair implication from the circumstances that the restriction or covenant is part of a general scheme or plan for the mutual benefit of the owners of all lots in a particular tract. McGovern v. Brown, 317 Ill. 73; Clark v. McGee, 159 Ill. 518; 26 C. J. S. Deeds, Sec. 167; Restatement, Property, Sec. 531, Comment D. The significant factors bearing upon the existence of a general plan in the instant case are: (1) The presence of the restriction in identical language in every deed and conveyance from the original subdivider; (2) express language in the deeds showing that the restriction was intended to run with the land and to be binding upon the successors and assigns of the original grantees; and (3) until the act complained of by the defendant, the unanimous observance of the restriction by every lot owner whose premises had been improved.

　　■ ■　Under the circumstances presented by the record it cannot be doubted that a general plan was intended by the subdivider. A reading of the restric-

tions makes it apparent that they were imposed in order that the subdivision might be better adapted and made more desirable by limiting improvements thereon to buildings designed and used exclusively for the residence of one family. In the construction of deeds the intention of the parties is to be determined from the instrument as a whole. Miller v. Ridgley, 2 Ill.2d 223. Plaintiffs lean heavily on the following paragraph of the covenant: "The building erected hereon shall be designed and used for the residence of one family only except that any person or persons related by blood or marriage to the then occupant, in conjunction with said occupant, and by servants shall not be considered of [a] violation of this clause." We do not find any ambiguity in these words. The defendant thoroughly explores the deed and points out many imperfections. It is not our function to say how the instrument should have been drafted. A careful consideration of the covenants convinces us that the defendant's proposed construction of a gasoline service station violates the restrictive covenants.

The defendant insists that an examination of the covenants reveals that the only express prohibition pertaining to business usage is that which states that "no noxious or offensive trade or activity shall be carried on." She states that since there is no negative language purporting to preclude trades or activities that are not noxious or offensive, such trades or activities cannot be said to be prohibited, and that plaintiffs failed to introduce any evidence that filling stations are either noxious or offensive. She argues that if the original grantor had intended to prohibit the conduct of all business on the premises, it would have been a small matter to have inserted a clause providing that "no business or trade shall be conducted on the premises," and that since he did not see fit to insert such an

152

express prohibition, it must be concluded that he did not intend such a prohibition. We are of the opinion that this paragraph was intended to supplement the previous paragraphs requiring the erection of single-family residence by forbidding the use of said residence for any trade or activity that might be considered a nuisance or become an annoyance to the neighborhood. Paraphrasing the statement of the court in Pulitzer v. Campbell, 262 N. Y. S. 743, the paragraph relative to noxious or offensive trades is to be considered in connection with other portions of the covenant and the purpose of the entire covenant was to preserve a residential atmosphere.

■■ Defendant says that the plaintiffs are violators of restrictions or acquiesced in the violations and are thereby prohibited from insisting on compliance with the restrictions, citing Curtis v. Rubin, 244 Ill. 88; McGovern v. Brown, 317 Ill. 73; and Wallace v. Hoffman, 336 Ill. App. 545. Harold Henricks, one of the plaintiffs testifying as an adverse witness for defendant, said that he was a typewriter serviceman, self-employed; that his place of business was in his pocket; and that he made repairs in people's offices and sometimes in his home, depending upon the amount of business he had. The volume of repairs which he actually performed in his home was so insignificant that his neighbors were unaware that he ever did so. Florian Cerny, another plaintiff, a free lance carpenter, testified that he received telephone calls in connection with business at his home; that he did not maintain an office; and that he did not do any "actual carpentry work" in his home. No other instance of a possible business use of any land in the subdivision is claimed by the defendant. The evidence does not support defendant's contention that the activities of either Henricks or Cerny were such as to violate any of the

153

restrictive covenants. Our courts have held that the fact that there may have been one or two violations in a subdivision does not create such a general breaking down of the covenant as to deprive complainants of their right to insist upon their enforcement.

■ Finally, the defendant asserts that where the character of a neighborhood has so changed as to render a parcel of land undesirable or unprofitable for use if the restriction be enforced, equity will not enforce the restriction. She states that the Universal Oil Company owns the northwest and northeast corners of the intersection of Algonquin and Mount Prospect Roads and has improved the northeast corner with a multi-million dollar industrial laboratory; that several other industrial developments and usages are present within a one-quarter mile radius of the subject premises; that the defendant has entered into a $400 per month lease with the Sinclair Refining Company covering the subject premises; and that there is a trend towards further industrialization and commercialization of the area to the extent that the premises are undesirable and unprofitable for residential development. Star Brewery Co. v. Primas, 163 Ill. 652; Ewertsen v. Gerstenberg, 186 Ill. 344; and Wallace v. Hoffman, 336 Ill. App. 545. In Gordon v. Caldwell, 235 Ill. App. 170, the court pointed out that the merits of each case must necessarily rest upon its own particular facts and circumstances in determining whether the character of the neighborhood has so changed as to defeat the purpose of the covenants and render their enforcement unreasonable. As hereinbefore stated, 26 of the lots have been improved with single-family residences and the remaining lots, including defendant's, are still unimproved. A reading of the restrictive covenants discloses the intention of the subdivider to establish a residential subdivision and the meaning of the

154

restricted covenants was not questioned until defendant's purchase. The restrictive covenant requiring the erection of a single-family residence has been adhered to ever since the subdivision was laid out, and the defendant's contention of a change in the neighborhood, as applied to the subdivision, is without merit. The intention of the subdivider to restrict the subdivision to residential use has been 86% accomplished, regardless of what changes occur in the surrounding area. A picture of the Universal Oil Products Company properties portrays a modern two-story office building set in a broad expanse of lawn, beautifully landscaped with trees and shrubs. It can hardly be said that such a building changes the residential character of the neighborhood. The photographs do not show that the construction in the area surrounding the subdivision affect the residential plan of the subdivider or diminishes the value of properties of plaintiffs or defendant or other owners of land in the subdivision.

For these reasons the decree of the Circuit Court is affirmed.

Decree affirmed.

FRIEND, P. J. and BRYANT, J., concur.