149 So.2d 141 (1962)
COMMUNITY BUILDERS, INC., et al., Plaintiffs and Appellants,
v.
Cecil Ray SCARBOROUGH et al., Defendants and Appellees.
No. 665.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1962.
On Rehearing January 28, 1963.
*142 Jones, Kimball, Harper, Tete & Wetherill, by G. Allen Kimball, Lake Charles, for plaintiffs-appellants.
Plauche & Stockwell, by Oliver P. Stockwell, Lake Charles, for defendants-appellees.
Graham, Smith & Wise, by Gilbert H. Graham, Lake Charles, for defendants-appellees.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiffs are developers and/or owners of homes in Golden Acres, a subdivision just outside the city limits of Lake Charles, Louisiana. They seek an injunction to restrain the defendants, Cecil Ray Scarborough, as owner, and Alvin J. Bryant, as lessee, from maintaining a lumberyard in said subdivision in violation of certain building restrictions. After trial on the merits, the lower court rendered judgment dismissing plaintiffs' suit. Plaintiffs now appeal.
The first issue arises out of the fact that separate notarial acts were filed creating restrictions on the commercial property and on the residential property in Golden Acres Subdivision. By an exception of no cause or right of action, the defendants contend that plaintiffs, being owners of lots in the residential area of the subdivision, have no right to seek enforcement of restrictions affecting only the commercial area.
On this issue, the facts show that a tract of approximately ten acres was subdivided into the forty-six lots of Golden Acres Subdivision. The developers decided to designate the three lots on the corner of the existing thoroughfares (Lots 1, 2 and *143 23 of Block "A") as commercial property and the remainder of the lots as residential. To accomplish this purpose they filed one instrument containing restrictions on the commercial property and another on the residential. However, both instruments describe the entire ten-acre tract and state specifically that the restrictions contained therein shall apply to and bind all future owners of property in the subdivision. We agree with the District Judge that these two sets of restrictions create an over-all plan for the development of the entire subdivision. The jurisprudence is well settled that building restrictions creating a general plan or scheme of development by written recorded instruments, constitute real rights running with the land and inure to the benefit of all subsequent owners and the remedy to prevent violation thereof is by injunction. See McGuffy v. Weil, 240 La. 758, 125 So.2d 154. The plaintiffs therefore have a right and interest sufficient to institute these proceedings.
The remaining issues involve alleged violations of the building restrictions placed on the three commercial lots. An understanding of these issues requires that these restrictions be quoted in full as follows:
"1. No gambling establishment, barrooms, saloons, or other establishment intended primarily for the retail sale of male, spiritous or vinous liquors, except cocktail lounges, shall be constructed, operated, or permitted to remain on these premises. This is not intended to prohibit the sale of said liquors in restaurants or in any other establishments where the sale of said liquors is secondary to the principal purpose of the establishment.
"2. No junk yard shall be operated, conducted or maintained on these lots, and the same shall not be used to store, keep or maintain wrecked or abandoned motor vehicles or machinery of any kind, unless wholly enclosed within a building or buildings therein.
"3. No building intended for commercial use shall be erected, operated or permitted to remain on any of these lots unless off-street parking facilities for customers' cars are provided to the minimum extent of twice the square foot area of the building floor space, said parking to be designated for convenient customer access and paved with concrete or other durable, permanent paving construction. Plans and specifications for any buildings and parking areas must receive the written approval of the neighborhood committee in accordance with the provisions herein.
"4. No other noxious, unsanitary, unsightly or unusually noisy business, trade or occupation shall be conducted or operated on these lots nor shall any other business which might be considered a nuisance be conducted or operated thereon.
"5. Nothing herein contained shall be construed as prohibiting the use of these sites for residential purposes, but if so used for residential purposes they shall be subject to the general residential restrictions applicable to a residence in this subdivision.
"6. Six foot heavy bamboo screen planting shall be placed on Lots 2 and 23 of Block A where such lots abut residential properties."
The first and most forceful contention made by the residential property owners is that defendants' lumberyard does not comply with the requirement of Restriction No. 3 above, that paved off-street parking facilities for customers' cars be provided to the *144 minimum extent of twice the square foot area of the commercial building floor space. To support this contention, plaintiffs introduced the testimony of a civil engineer which shows the following: The building used by the defendant Bryant as an office, hardware store and display room, contains 1,872 square feet of floor space; the sheds used to store lumber, cement and building materials contain 4,619.4 square feet of space, within the foundations, which must be counted as floor space (These sheds have large overhangs on the fronts containing 2,774.4 square feet, but these overhangs cannot be counted as floor space.); the total floor space of the commercial buildings is therefore 6,491.4 square feet. The minimum parking area required is twice the floor space, that is, 12,982.8 square feet. The actual paved parking space is only 2,084.5 square feet, located in front of the office building. Therefore, the paved off-street parking facilities for customers' cars falls 10,898.3 square feet short of the minimum required by the building restrictions.
The trial judge held that the defendant Bryant had complied with the parking space requirement. He reasoned as follows:
"It would be a vain and useless thing to require every business of every type to have off-street parking facilities for customers' cars to the minimum extent of twice the square foot area of the building floor space. The amount of parking space would necessarily depend upon the type of business established. * * * It is obvious that the required amount of parking area for customers at any business place was established by restriction for the purpose of keeping cars from parking around on the neighborhood streets and creating noises and conditions which would be inconvenient for all parties concerned. The evidence in this case clearly establishes that the amount of customer parking area provided by the defendant, Alvin J. Bryant, is completely adequate for the number of customers which he may have at his place of business at any one time. Under those circumstances, this court finds that the defendant, Alvin J. Bryant, is not violating the substance and the intent of this covenant. On the contrary, he has complied with the intent of the covenant even though not with the letter of the covenant."
As the trial judge states, the "letter" of the parking space requirement is clear. In specific language, it requires paved, off-street parking for customers' cars to the minimum extent of twice the square foot area of the building floor space. Let us now seek to determine whether, despite the "letter" of the covenant, it must be construed as intending that the amount of parking space required depends on the type of business conducted, rather than the floor space of the buildings.
The applicable law is succinctly stated in Salerno et al. v. De Lucca, 211 La. 659, 30 So.2d 678, 680, as follows:
"Although these stipulations are stricti juris and every doubt should be resolved in favor of the unencumbered use of the property, whenever differences arise as to the extent or limitation of these restrictions, we must look to the intention of the party encumbering the property from the words used in the stipulations in the deed, consideration being given to the entire context of the instrument rather than to a single phrase or clause, for obviously those acquiring the property in the restricted area were motivated and influenced to purchase the same because of these limitations and they are entitled to the presumption that they will be fairly and faithfully complied with." (See also 14 Am.Jur. 620-621, Section 211 for a general statement of the law on the construction of covenants in accordance with the intention of the parties.)
We are unable to agree with the District Judge that the sole purpose for establishing the parking area requirement was to keep *145 cars from parking on the neighborhood streets and there creating noises, etc. Although this was probably one of the purposes, it certainly was not the only purpose. We think the record shows it was also the purpose and intention of the developers, by means of this parking space requirement, to limit and restrict the size of the commercial buildings which could be constructed and thereby restrict the use of the property by those types of businesses requiring large and numerous buildings. This is brought out by the testimony of Dr. Maurice Kushner, an expert realtor, that the large unsightly lumber sheds depreciated the value of the adjacent residential property, to the extent of approximately forty per cent for those next to the lumberyard and diminishing to ten per cent for those homes most distant. Other witnesses testified that they thought these large unsightly corrugated iron lumber sheds were objectionable as being unsightly, and blocking their view, light and air. In this very case, defendant's inability to adapt his lumber and building material business to the premises, without violating the parking area restrictions, is a clear indication of the fact that this is not a type of business contemplated for operation on the premises. The buildings constructed by Mr. Bryant, cover a total 9,265.8 square feet (including the overhangs of the lumber sheds) of the total of 24,325.25 square feet of the commercial property in question, which shows that it is physically impossible with such large buildings for the defendant Bryant to comply with the parking space requirement, even if all of the space outside of the buildings could be designated as customer parking and all of it paved. We therefore conclude that defendant Bryant cannot be relieved from the requirement of this restriction merely because he does not presently need the parking area required.
In this court counsel for the defendants makes the additional argument that the paved parking area for customers need only be based on the square foot area of that portion of the office building which customers would normally enter and use. Counsel has not suggested exactly which portions of this building (which is used for offices, sales and display space) could be so designated. If the entire office building is considered, it has a floor space of 1,872 square feet which would require 3,744 square feet of paved parking space, yet the actual concrete parking space on the property is only 2,084.5 square feet. In our opinion, this restriction cannot be logically construed as showing an intention that the parking space will be based only on the area in each building actually used by customers.
Counsel for defendants also argues that the lumber sheds are not buildings for "commercial use" within the meaning of restriction No. 3 quoted above, so as to require that their square foot area be included for purposes of determining the required parking space. We find no merit in this contention. A lumber shed is a building and in this instance it is clearly being used for commercial purposes, that is, in connection with a business operated for profit by buying and selling goods. In addition to the fact that these lumber sheds are commercial buildings within the usual ordinary meaning of these terms, we believe that they are likewise such buildings for "commercial use" within the meaning and intention of restriction No. 3 quoted above. As we have already stated, we think that it was one of the purposes of the developers, through the parking space requirement, to limit and restrict the size of commercial buildings which could be constructed, thereby, of course, also restricting the types of businesses which could be operated on the premises. To sustain defendant's argument, would violate this purpose of the restriction. See 14 Am.Jur. 622-624, Sections 216-218 for a general discussion of the construction of terms used in building restrictions so as to accomplish the purpose thereof.
The next issue is whether plaintiffs are entitled to an injunction herein because the defendant Bryant failed to secure written *146 approval of his buildings by the "neighborhood committee" as required by restriction No. 3 above. The facts show that this is the only mention of a neighborhood committee appearing anywhere in the two instruments in question. There are no provisions as to how this committee was to be selected, the number of members, the organization thereof, its powers and duties, terms of office or any other provisions whatever. No such committee was organized until the defendant Bryant began to move his buildings onto the property in question, at which time the developers and home owners met and selected a three-man committee which contacted Bryant in an effort to seek his compliance with the restrictions. Negotiations failed and this suit followed.
We think the District Judge was correct in holding that the restriction requiring approval of construction plans by a neighborhood committee is too general, indefinite and inexact to constitute a sufficient basis for an objection to a person constructing buildings for commercial use on the property.
We likewise agree with the trial court's conclusions that this lumberyard was not proved to be so noxious, unsanitary, unsightly or unusually noisy, or that it must be considered a nuisance per se, so as to be prohibited by restriction No. 4 above. Although certain of the home owners testified that the lumberyard was a source of mice, roaches and snakes, and that it was unusually noisy and unsightly, we think the record amply supports the finding of fact by the trial judge that, taking into consideration the locality, the reasonableness vel non of the business, the degree of discomfort to persons of ordinary sensibilities and all of the other facts shown by this record, the plaintiffs have not shown that this lumberyard was a nuisance per se or that it constitutes a violation of restriction No. 4.
The final issue is whether the defendant Bryant has failed to comply with restriction No. 6, requiring that a six-foot bamboo screen be planted along the boundary line between the commercial and the residential properties. The evidence reveals that defendant, Mr. Bryant, planted a bamboo hedge around the property but, as time passed, the children in the neighborhood pulled some of the bamboo down. Mr. Bryant removed the remainder of it at the request of the adjacent home owners who felt that this condition was a hazard for their children. We agree with the trial judge that under these circumstances, Mr. Bryant has complied with the restrictive covenant in question. Ordering him to again plant more bamboo would serve no useful purpose and if the neighbors are correct, would actually create a hazardous condition for the children.
Recapitulating, we find that the only grounds for the injunctive relief sought is that the defendant Bryant has erected, operated and permitted to remain on the property, buildings for commercial use without providing paved off-street parking facilities for customers' cars to the minimum extent of twice the square foot area of the total floor space of the buildings, in violation of restriction No. 3 quoted above. Within the meaning of this restriction, we find that the building floor space is 6,491.4 square feet which would require 12,982.8 square feet of proper parking facilities. Defendant Bryant now has only 2,084.5 square feet of such parking facilities. We do not find that plaintiffs have proved any other grounds for the injunctive relief requested.
This brings us to a consideration of the type of judgment to be rendered. Since the injunctive relief sought is equitable in nature, we have considered the respective equities. The facts show that defendants were admittedly aware of these restrictions which had been recorded before Bryant signed the lease, and before the defendant Scarborough bought the property. In addition, Mr. Bryant was warned by the so-called "neighborhood committee" that the home owners considered his lumberyard to *147 be in violation of the restrictions and in particular of the parking space requirements. Bryant was advised that if he proceeded with his construction plans, a suit would be filed. He proceeded at his own risk. Of course, if he has to tear down part of his buildings or construct additional paved parking facilities for customers, or if he has to remove his lumberyard he will be put to considerable expense, but, on the other hand, if the buildings are permitted to remain, it will, as the expert testimony shows, devalue the residential property considerably.
Under the circumstances, we have decided that Mr. Bryant should be given an opportunity to comply with the parking space requirement within a reasonable time. If he does not comply within the time fixed, then he must remove the offending buildings from the property. See 14 Am.Jur. 672-673, Sections 352-354 for a general discussion of judgments rendered to enforce restrictive covenants.
In an alternative demand, the defendant Bryant avers that in the event judgment be rendered for the plaintiffs he is entitled to judgment over against Mr. Scarborough, Bryant's lessor, for any damages or expenses incurred by reason of the lessor's failure to maintain the lessee in peaceful possession of the premises in accordance with the purposes of the lease. It may be that Mr. Bryant is entitled to this relief, but it is impossible at this time to determine with sufficient legal certainty the amount of the damages which might be suffered by him. The only evidence in the record is the testimony of an accountant who stated that according to Mr. Bryant's books, it cost him $15,414.45 to move his business to the leased premises. From this evidence, Mr. Bryant argues that it is reasonable to assume it will cost the same amount to move the buildings to another location. Defendant Bryant also claims that he will be deprived of the profit he would receive from his lumberyard during the time he is involved in moving his buildings, if he has to do so. We do not think that these damages have been proved with sufficient certainty in these proceedings to allow recovery herein. However, we specifically reserve to Mr. Bryant the right to seek them in other proceedings.
Bryant also asked for judgment against Scarborough for attorney fees in the sum of $5,000 incurred by him in defending the instant case. No authority has been cited which supports this contention. The case of Tidwell v. Meyer Brothers, 160 La. 778, 107 So. 571, cited by defendant Bryant, actually denied attorney's fees in a similar situation and pointed out that ordinarily attorney's fees are not allowed as an item of damages for breach of contract.
For the reasons assigned, the judgment appealed is reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs and against the defendants, Alvin J. Bryant and Cecil Ray Scarborough, decreeing that the buildings, including lumber sheds, constructed and maintained by defendant Bryant on the subject property for commercial use as a lumberyard, are in violation of building restriction No. 3 quoted hereinabove, in that said buildings have been erected and maintained without providing off-street parking facilities for customers' cars to the minimum extent of twice the square foot area of the building floor space of said buildings. It is further ordered, adjudged and decreed that the said defendant Bryant comply with said building restriction within a period of ninety days after this judgment becomes final, by removing portions of the existing buildings and constructing paved parking facilities as necessary. In the event the defendant Bryant fails to so comply within said ninety day period, he is ordered to remove from the premises the buildings which have been erected and maintained by him thereon. It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs and against the defendants, Cecil Ray Scarborough and Alvin J. Bryant, *148 enjoining and prohibiting the future leasing or use of said property, after said ninety-day period, in violation of said building restriction quoted above as we have interpreted it in these proceedings.
It is further ordered, adjudged and decreed that the third party claim of the defendant, Alvin J. Bryant, against the defendant, Cecil Ray Scarborough, for judgment for damages and moving expense is denied for lack of sufficient certainty of proof of the amount of such claim, reserving, however, to Bryant the right to assert this claim in other proceedings. Bryant's claim for attorney's fees incurred in connection with these proceedings is denied.
All costs incurred in the lower court, as well as the costs of this appeal, are assessed against defendants.
Reversed and rendered.

On Rehearing
CULPEPPER, Judge.
A rehearing was granted herein, restricted to the issues presented by Bryant's alternative third party demand against Scarborough, as lessor, for any damages suffered by Bryant, the lessee, as a result of the lessor's failure to maintain the lessee in peaceful possession of the premises. In our original opinion we nonsuited this third party demand, on the grounds of lack of sufficient proof of the amount of any such damages. After considering the very forceful argument presented by able counsel for Scarborough in connection with this rehearing, we have decided that the third party demand can be finally disposed of in these proceedings because Scarborough is not liable in damages to Bryant, even if the amount thereof had been proved.
Briefly reviewing the relevant facts, the record shows the written lease from Scarborough to Bryant provided that the leased premises "shall be used in the operation of a lumber and building materials business and any and all other business related or connected thereto, * * *." The lease further provided that "all improvements made on the land described herein shall be at the expense of the lessee and that said improvements shall belong to the lessee * * *." There is no provision in the lease as to the size or type of improvements to be erected by the lessee, other than the agreement that it would be a lumber yard.
Furthermore, as stated in our original opinion, the facts show that at the time Bryant signed the lease he was aware of the building restrictions on the property. In addition, the facts show that before Mr. Bryant built his improvements he was warned by the "neighborhood committee" that the home owners considered his improvements to be in violation of the restrictions, and in particular of the parking space requirements. Bryant was advised by this committee that if he proceeded with his construction plans, a suit would be filed. Despite this knowledge of the building restrictions and these warnings as to the consequences of his violation thereof, Bryant proceeded with the construction of improvements which, in our original opinion, we have found to be in violation of the parking space requirements.
A further fact pertinent to the present issues, is that in our original opinion we found the use of the property for a lumber and building materials business was not per se a violation of the building restrictions.
The applicable law from our LSA-Civil Code is as follows:
"Art. 2692. The lessor is bound from the very nature of the contract, and without any cause to that effect:
"1. To deliver the thing leased to the lessee.
"2. To maintain the thing in a condition such as to serve for the use for which it is hired.

*149 "3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."
"Art. 2696. If the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of the lease."
It is the lessee's contention that if he is forced to comply with our original decision by removing portions of the existing buildings and/or constructing paved parking facilities as necessary to comply with the off-street parking requirements of the building restrictions, he will be unable to use the premises as a lumber yard and therefore, in effect, he will be evicted.
We cannot agree with this contention. Actually, in our original opinion, we have already held that the lessee can comply with the off-street parking requirements of the building restrictions, "by removing portions of the existing buildings and constructing paved parking facilities as necessary." If the lessee chooses to do so, he may continue to use the property for purposes of a lumber yard if he complies with the parking space requirements of the restrictions.
In view of the above, it is perhaps redundant to state that the lessor has not breached his duty to maintain the lessee in peaceful possession of the premises for the use for which it was leased. All that Scarborough agreed to do was to lease the land to Bryant to "be used in the operation of a lumber and building materials business." The construction of the improvements by Bryant, in violation of the parking area requirements of the building restrictions, of which Bryant was not only aware but was warned, is entirely the fault of Bryant. Scarborough was in no way responsible for these acts.
The abovementioned contentions are the only ones made to this court in connection with this rehearing. We conclude that the third party demand must be dismissed without reservation to Bryant of any rights to reassert this claim in other proceedings.
For the reasons assigned, our original decree is amended so as to render judgment herein in favor of the third party defendant, Cecil Ray Scarborough, and against the third party plaintiff, Alvin J. Bryant, dismissing the third party complaint filed by Bryant against Scarborough. Otherwise than as herein amended our original decree is adherred to.
Original decree amended on rehearing.