ALLAN NEAL & ANDREE NEAL, Husband and Wife, Plaintiffs

v.

GRAPETREE BAY HOTELS, INC., a Virgin Islands Corporation and CASSAVA GARDENS, LTD., a Virgin Islands Corporation, Defendants

Civil No. 383-1970

District Court of the Virgin Islands

Division of St. Croix

September 13, 1971

---

RUSSELL B. JOHNSON, ESQ., Christiansted, V.I., *for the plaintiffs*

WARREN H. YOUNG, ESQ., Christiansted, V.I., *for the defendants*

CHRISTIAN, *Chief Judge*

## OPINION

Plaintiffs have brought this action against the defendant corporation seeking injunctive relief. The facts necessary to a decision in this cause are virtually undisputed, and

as hereinafter set forth they constitute my finding of fact in the case.

East End Development Corporation, a Delaware corporation, not party to this suit and in no way involved in it, acquired substantial acreage in the East End quarter of St. Croix, Virgin Islands. The estates involved were originally known as Estates Grapetree Bay, Slob and Turner's Hole. Estates Slob and Grapetree Bay subsequently came to be divided into North and South Slob and North and South Grapetree Bay.

By deed of June 9, 1959, East End Development Corporation conveyed a subdivision of North Slob described as Plot No. 11 to David C. and Melva D Schnabel. The Schnabels, in turn, conveyed that plot to the plaintiffs herein by deed of May 5, 1960. Plaintiffs also owned Plot No. 66 of South Slob and Plot No. 16 of Parcel No. 33 of North Slob.

In subdividing Estate Slob and conveying plots in that subdivision, East End Development Corporation imposed certain covenants and restrictions, to the end, that a substantial portion of Slob including Plot No. 11 would forever remain a strictly residential subdivision, one single-family dwelling on each plot, with separate garage and guest house permitted. Servants quarters were also permitted so long as the same was included in either the main dwelling or the garage. Manufacturing, merchandising, trade and professional practice other than architecture was expressly forbidden and among the specifically enumerated types of operations excluded were hospitals and convalescent homes. The Schnabel deed recited that,

"The premises herein conveyed are a part of Estate Slob. Grantor reserves the right to set aside from Estate Slob a beach, recreational area and yacht marina for the use of property owners in Estates Turner Hole, North and South Slob, and North and South Grapetree, and to have a hotel constructed therein. Grantor further reserves an area south of the public road for development as a

270

community center, shopping center and for other facilities designed to serve the needs of property owners in the five aforementioned estates. All property owners in Estate Slob shall have a perpetual easement of use and enjoyment of recreational facilities hereinabove described. Such use, however, shall be subject to the rules, regulations, dues, fees, and/or rates, if any, which may be established from time to time by the owner or operating management of said facilities. The balance of Estate Slob, which includes specifically the property above described and hereby conveyed (Plot No. 11 conveyed to David and Melva Schnabel) shall comprise the residential subdivision and shall be subject to the restrictions and covenants hereinbelow set forth."

Plaintiffs acquired Plot No. 11 subject to all of the conditions, covenants and restrictions contained in the Schnabel deed.

The two corporate defendants are Virgin Islands corporations. Defendant, Cassava Gardens, Ltd., proposes to erect a convalescent home with an apartment complex on Plot No. 33 of Estate North Slob. The apartments are to be occupied by those who would staff the convalescent home, as well as any other persons who might rent such apartments in connection with their rest or treatment at the convalescent home. Plot No. 33 is a portion of the premises described as the area which the Schnabel grantor had reserved which lies south of the public road, and which had been reserved "for development of a community center, shopping center, and for other facilities designed to serve the needs of the property owners" in Estate North Slob and South Slob, North and South Grapetree Bay and Turner's Hole.

Defendant, Cassava Gardens, Ltd., applied to the Planning Board for a special exception and variance which would permit it to erect the proposed convalescent home and apartment complex on Plot No. 33. This application was made necessary by the fact that the area in which Plot No. 33 lies is zoned R-10 (One or Two-Family Residential.

See 29 V.I.C. section 266). At the hearing before the Planning Board, these plaintiffs, among others, opposed Cassava Gardens, Ltd.'s, application. The Board ruled favorably on the application and plaintiffs appealed to the Board of Zoning, Subdivision and Building Appeals. This suit was brought while that appeal was pending. The Board of Zoning, Subdivision and Building Appeals has, since the pendency of this suit, upheld action of the Planning Board.

It appears that one, Fairleigh S. Dickerson, Jr., was the sole stockholder of East End Development Corporation. That corporation conveyed to him the entire remainder of Estate Slob consisting of some 86 U.S. acres. Out of that remainder, Dickerson carved out a plot designated No. 27 and gave the same to Fairleigh Dickerson University which then proceeded to construct a marine biology laboratory thereon. Plot No. 27, like Plot No. 33, lies within the reserved area south of the public road to which reference was made above. Prior to the construction of the marine biology laboratory, the University applied for and obtained a special exception and variance from the Planning Board. It does not appear that any of the parcelists in Estate Slob, Grapetree Bay and Turner's Hole opposed the University's application. Admittedly, these plaintiffs, with full knowledge of the University's proposed laboratory, did not appear and filed no objection whatsoever. There was some suggestion that it had been their intention to offer opposition, but either through their inadvertence or through the inadvertence of their counsel, this was not done. In any event, it is undisputed that no objection was filed by them nor on their behalf to the proposal of the Fairleigh Dickerson University to erect the marine biology laboratory. That facility was substantially erected by the time this suit was brought and it would appear is now fully completed and functioning.

It should be noted that the proposed convalescent home, in its first phase, will consist of a 50 bed unit with plans for expansion up to 100 beds. Initial plans for the apartment complex call for 50 apartments, again with plans for expansion which would double that number. The persons who will make use of the convalescent homes and apartments may include those residents of the five estates above mentioned who desire to utilize the facilities but it will not be limited to them. The facilities will be open to all persons residing in the Virgin Islands, presumably, and also to any mainland residents who find the use of such facilities necessary or desirable.

Plaintiffs seek to enjoin the use of Plot No. 33 for the construction and operation of the rest or convalescent home and integrated living operation for the erection of which Cassava Gardens obtained permission from the public authorities.

Several issues are raised by the pleadings, admissions of parties and the testimony adduced at trial, namely,

1. Are there any restrictions which would bar the proposed use of Plot No. 33?

2. Given the existence of the restrictions, have they been waived by plaintiffs?

3. Admitting the existence of the restrictions, do these plaintiffs have standing to raise them?

4. Does Cassava Gardens proposal fall within meaning of ". . . community center" or "other facilities designed to serve the needs of the property owners in the five before mentioned estates?"

■ I first deal with the matter of waiver. Defendants contend that whatever rights plaintiffs may have had, if any, to enforce restrictive covenants against the remainder of North Slob lying south of the public road, they waived the same by their failure to object to the erection of the marine biology laboratory by Fairleigh Dickerson University. It is true that such a marine biology laboratory cannot be said to be the type of community or other facility for

273

the benefit of the home owners as contemplated by the parties in the Schnabel deed, but if these plaintiffs had the right to enforce restrictive covenants as they claim, such right is not so easily lost on the theory of waiver. The permission of one violation of a restrictive covenant without objection does not constitute a waiver as to other such violations. Eichlesbach v. Harding, 309 S.W.2d 681 (Mo. 1958). In Eichlesbach, 29 out of 160 parcelists had violated certain restrictions against erecting fences. Holding that the failure of lot owners to object despite relatively widespread violation did not constitute a waiver, the Court said:

> Receiving universal recognition is the principle that where, as here, the restrictions apply to an entire subdivision, and are part of an overall scheme designed for the benefit of all property owners in the restricted area, violations must be so general as to indicate an intention or purpose on the part of those residing in the subdivision to abandon the plan or scheme intended to be maintained by force of the restrictions. (citations omitted.)

Similarly, in Titus v. Kopacz, 359 Mich. 671, 103 N.W.2d 344 (Mich. 1960), 14 violations on 163 lots were not deemed sufficient to establish a waiver. Nor would the acceptance of minor violations constitute such waiver as would bar objection against more serious violations of covenants. Hendricks v. Bowles, 20 Ill. App.2d 148, 155 N.E.2d 644 (Ill. 1959); Jeffrey v. Lathrup, 303 Mich. 15, 101 N.W.2d 827 (Mich. 1961). Even where parties have acquiesced in violations respecting lots some distance removed from theirs, they were still held to have reserved their right to object to similar violations as to lots closer to theirs where no intention to abandon the general scheme or plan was shown. Brideau v. Grissou, 369 Mich. 661, 120 N.W.2d 829 (Mich. 1962).

In the case at bar, I find nothing in the evidence which would indicate an intention on the part of plaintiffs to abandon their overall plan as originally conceived and

stated in the covenants and restrictions in the Schnabel deed. The acceptance of the marine biology laboratory standing alone is not sufficient to evidence such intention. No other violations of the covenants and restrictions have been mentioned or suggested and I therefore assume that there have been none. Thus, I conclude that in these circumstances, no waiver may be ascribed to these plaintiffs of any right which they may have in the premises and that they cannot be barred from the relief they seek on the basis of waiver.

Next, defendants mount a challenge to plaintiffs standing to enforce the covenants and restrictions, assuming the existence of the same. The proposed convalescent home and apartment complex, as we have seen, is to be located in the area "south of the public road" which the grantor reserved,

for development as a community center, shopping center and for other facilities designed to serve the need of the property owners in the five aforementioned estates.

Plaintiff's Plot No. 11, through which he acquired such rights of enforcement as he may have, is located in that portion of North Slob described as,

"the balance of Estate Slob . . . shall comprise of the residential subdivision and shall be subject to the restrictions and covenants herein below set forth."

Defendants urge that plaintiffs being the owners having proprietary interest in the residential areas only, cannot be heard to complain about anything done or erected in the areas reserved "south of the public road", for the restrictions which burden Plot No. 11, defendants claim, have no application to that reserved area. Defendants conclude that if they are indeed violating any overall restrictions or plans, only their grantor, and no other person, can enforce compliance against them. I do not reach the same conclusion. I find an intention of the original grantor, ":East

275

End Development Corporation", to benefit Plot No. 11 owned by plaintiffs by the restrictions which it imposed on the reserved area. That intention, I glean from the language of the documents which I have examined and the surrounding restrictions.

 Plaintiffs allege the existence of a general scheme or plan for the development of the entire area as a residential neighborhood. Whether or not such a plan does exist is the question of fact which the party urging such plan and the enforcement thereof have the burden of proving.

The general theory behind the right to enforce restrictive covenants is that the covenants must have been made with or for the benefit of the one seeking to enforce them. The violation of a restrictive covenant creating a negative easement may be restrained at the suit of one for whose benefit the restriction was established irrespective of whether there is privity of estate or contract between the parties, or whether an action at law is maintainable. The action of court of equity in such cases is not limited by rules of legal liability and does not depend upon legal privity of estate, or require that the parties invoking the aid of the court should come in under the covenant, if they are otherwise interested. The rule is well established that where a covenant in a deed provides against certain uses of the property conveyed which may be morious [sic] or offensive to the neighborhood, inhabitants, those suffering from a breach of such a covenant, though not parties to the deed may be afforded relief in equity upon a showing that the covenant was for their benefit as owners of neighboring properties. Osius v. Barton, 147 S. 862, 865 (Fla. 1933).

 I find that the plaintiffs have shown that the reservation of the area in question for use as a community center was for their benefit and that such restriction was a part of the general plan of development intended to benefit their plot. The Schnabel deed specifically states that the permitted use of the reserved area should be such as was "designed to serve the needs of the property owners in the five aforementioned estates." Plaintiffs come squarely with-

in this classification. The deeds, other than the Schnabel deed, either by express terms or by reference, incorporated the terms, restrictions and covenants which were designed to insure the perpetuation of the overall plan which I have found to exist. I see no way of avoiding the conclusion that these restrictions, part of the overall plan of development, were to inure to the benefit of all of the parcelists in the five estates in question. It was within the grantor's (East End Development Corporation) power to reserve and restrict the use of that area as it saw fit. It was likewise within that grantor's power to benefit whom it chose. I find that it was the grantor's specific intention to benefit persons in the position of these plaintiffs and the reliance of these plaintiffs on the restrictions which would maintain the character of the neighborhood is not misplaced. See Community Builders, Inc. v. Scarborough, 149 So.2d 141 (Ga. 1963) ; See also the following annotations dealing with "who may enforce restrictive covenants", 21 A.L.R. 1286; 33 A.L.R. 676; 60 A.L.R. 1224; 89 A.L.R. 812.

Defendants point and would make something on the fact that the deed from East End Development Corporation to Dickerson executed in 1962 omitted the usual restrictions and covenants and included a provision not found in the other documents. I find no relevance in this to the issues of this case and, therefore, leave it out of consideration.

 The final issue for determination is whether or not the convalescent home and apartment complex, as planned, may be considered as "designed to meet the needs of the property owners in the five aforementioned estates." Having in mind the size of that operation, the wide area to which its advertisement would be beamed, the type of service or services it would offer, I find that it cannot be so defined. Its benefits to the property owners, as such, would be minimal. I find that it is clearly excluded from

277

the uses permitted in the reserved area within which Plot No. 33 falls.

Accordingly, I conclude that plaintiffs are entitled to the injunctive relief they seek. Let judgment be entered.