Alphonso **FRANCIS** et al., Plaintiffs,

v.

Wilfredo **RIOS**, Defendant.

Civ. No. 432/1972.

District Court, Virgin Islands,
D. St. Croix.

Nov. 22, 1972.

Bryant, Costello & Burke, Christiansted, St. Croix, V. I., for plaintiffs.

Derek M. Hodge, Christiansted, St. Croix, V. I., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

WARREN H. YOUNG, District Judge.

Plaintiffs seek to enjoin defendant from using as a bar and poolroom, a building, the construction of which is substantially completed. The facts are not complex and are undisputed.

Plaintiff Alphonso Francis owns Plot 118 of Estate Glynn, having purchased it in 1968 from the subdivision developer Glynn Garden Estates, a limited partnership. Defendant Wilfredo Rios owns Plot 42 in the same subdivision, having purchased it in 1970 from Virginia Shaubah, who originally purchased it from Glynn Garden Estates.

The developer, Glynn Garden Estates, had a standard form of deed, which subjected all conveyances to a "declaration of conditions, covenants, restrictions and agreements, all of which shall be covenants running with the land; all of which restrictions shall be placed upon all plots in said subdivision . . ."

Paragraph 4 of those restrictions reads as follows:

> No trade or business shall be conducted upon the premises except on Plot 45–A, 45, 46, 47, 59, 60, 61, 64, 65, 66, and 67, which are hereby designated as limited commercial plots, and nothing shall be maintained or constructed on said plots which shall be an annoyance or nuisance to the neighborhood . . .

Virginia Shaubah received title to Plot 42 by such a deed, but in her deed to defendant Rios, she merely recited that the property in question was "subject to all conditions, covenants and restrictions as of public record appear".

About five months after Rios acquired Plot 42, he applied to the Planning Board for a special exception and variance to build on said plot a bar and poolroom. Plot 42 was zoned R–10 (one or two family residential; 29 V.I.C. § 266). Statutory notice (posting on a tree) of the Planning Board hearing .was made; the hearing was duly held with no opposition registered to the requested exception. On June 7, 1971, Rios received approval of the special exception. The written approval characterized the bar-poolroom building as a "community facility". Rios commenced construction on July 1, 1972.

Plaintiffs Alphonso Francis and Glynn Garden Estates Homeowners' Association, an unincorporated homeowners' group, filed this suit on August 4, 1972, to enjoin further construction of the building for its proposed use as a bar-poolroom.

The parties agree and acknowledge that within the subdivision there have been numerous violations of the restrictive covenants. Twenty-seven plots (out of a total of about 200) have shacks built on them, contrary to the $7,000 minimum construction cost restriction. Three plots in the residential area have small neighborhood-type commercial stores (two grocery stores and one dry goods store). Moreover, applications have been made and are now pending before the Planning Board for special exceptions to construct commercial or combined commercial-residential buildings in the residential area of the subdivision (plots 45–B, 155, 120, 32 and 87), to be used for business related activities.

In order to resolve this conflict, the Court is called upon to determine the following issues: first, whether the nature of the community has changed so as to render the restrictive covenants barring commercial activity useless; second, whether failure to object to past violations of this covenant and others constitutes a waiver of the rights to enforce; and, third, whether delay in filing this suit for injunctive relief constitutes waiver.

Two cases in this jurisdiction have been decided on issues similar to that presented here. *See* Neal v. Grapetree Bay Hotels, Inc., 8 V.I. 267 (1971); Grubel v. MacLaughlin, 6 V.I. 490, 286 F.Supp. 24 (1968). However, the case at hand does not reach the major question settled in *Grubel*, for no new zoning ordinance has been placed in effect which would negate the enforcement of the restrictive covenant. The *Neal* case seems to be most on point and, to the extent that it is applicable, represents the controlling law. The Court in *Neal* held, among other things, that past acceptance of violations of the restrictive covenants does not necessarily constitute a bar to suits enjoining later violations. The rule of *Neal* is generally consistent with the law in other jurisdictions. However, the rule must be considered in the factual context of each case as to the character and materiality of the breach. Eichelsbach v. Harding, 309 S.W.2d 681 (Mo.App.1958).

Glynn Garden Estates was developed as a residential community. The covenants in the deeds from the common grantor were placed on the land as an expression of a desire to preserve the nature of the original residential development scheme. To this end, commercial activity was authorized only upon the plots specifically set aside for

such purposes in the deeds. It is only when the nature of the peripheral neighborhood has changed that restrictive covenants, otherwise valid, become ineffective and are stricken down by the courts. So long as past breaches of use restrictions have not denigrated the original development scheme, courts will enforce the covenants. Rome v. Rehfuss, 391 Pa. 82, 137 A.2d 233 (1958). From the evidence in the record supplemented by my on-site inspection of the subdivision, I find that the subdivision is first and foremost a residential community. There is no evidence of an abandonment of the original development scheme. I must conclude that the covenants restricting the use of the land to residential use still have value and may be enforced.

█ The next question to be treated is whether the 27 violations of the minimum construction cost restriction and the 3 violations of the residential use restriction now tolerated in the area constitute a waiver of the right to enforce the residential use covenant involved in this case. Minor violations of restrictive covenants ordinarily do not constitute a waiver of the right to enforce. Henricks v. Bowles, 20 Ill.App.2d 148, 155 N.E.2d 664 (1959). The parties have stipulated that the 27 shacks are violations of the covenants. However, even where there are apparent and obvious violations of restrictions of the number involved here, courts have been reluctant to indicate that a waiver has occurred. Carey v. Lauhoff, 301 Mich. 168, 3 N.W.2d 67 (1942) (23 violations out of 189 lots). It is important to note that the 27 minimum construction cost violations are not violations of the use covenant in controversy here. Defendant's building, which is now almost finished, has an exterior design almost identical with the neighboring houses. Aesthetically the building can be taken for a residence, but, to serve its commercial purpose, it will undoubtedly have one or more signs to distinguish it as a bar-poolroom. What remains to be determined is whether the failure to ob-

ject to the present three violations of the use restriction (two neighborhood grocery stores and one dry goods store) constitutes acquiescence or waiver in this case. Other cases have observed that:

> Plaintiffs are not estopped from preventing a most flagrant violation of the restrictions on account of their theretofore failure to stop a slight deviation from the strict letter of the restrictions.

Boston-Edison Protective Association v. Goodlove, 248 Mich. 625, 227 N.W. 772, 773.

As I have already noted, mere acquiescence to the violation of a restrictive covenant does not in and of itself amount to an abandonment, Titus v. Kopacz, 359 Mich. 671, 103 N.W.2d 344 (1960); Eichlesbach v. Harding, supra, as long as the covenant remains of value. Waiver does not result unless there have been general and multiple violations without protest. Inasmuch as Glynn Garden Estates has not undergone an overall change in its residential character, acquiescing to three past violations is not sufficient to bar the plaintiffs from seeking relief under the restrictive covenant in the instant case. Harris v. Pierce, 73 So.2d 330 (La.App. 1954). Another court in Zelinski v. Becker, 318 Mich. 209, 27 N.W.2d 615 (1947), while enjoining the use of a residence for commercial activity, indicated that covenants which pertained to the maintenance of the area as a residential neighborhood would be construed to achieve that end especially where to nullify those restrictions would have imposed an injustice upon the property owners. See, also Dorr v. Harrahan, 101 Mass. 531 (grocery store).

█ The law concerning waiver which controls this case is sufficiently set forth in the Neal case. It serves no purpose to rehearse in detail what has been held to be the law of this jurisdiction. I find in the case at bar that there is no evidence of an intention to abandon the restrictive covenants as to

the use to which buildings in the residential subdivision may be put.

■ Lastly, defendant urges that the delay in bringing this particular suit for injunction has caused him damage since he has constructed the building relying upon the special exception granted by the Planning Board. There was no opposition from those who now seek to enjoin his actions. It is true that it is possible for one to maneuver himself into a position of being estopped from enforcing a covenant. Courts have generally retreated from enforcing restrictive covenants where the plaintiff, over an unreasonable period of time, has acquiesced to the particular violation without protest. Ballard v. Kitchen, 128 W.Va. 276, 36 S.E.2d 390 (1945) (six years had past and plaintiff with knowledge had permitted a printing press to be operated and the operation expanded); Borsvold v. United Dairies, 347 Mich. 672, 81 N.W.2d 378 (1957) (plaintiff waited ten years to seek enforcement of covenant against business uses of land). The delay in this case cannot be construed as a waiver. It was only a little more than a month after the commencement of construction that this suit was filed. Indeed, one case has held that where the building in question is of a class permitted by the covenants, as here, and that the injunctive relief being sought pertains solely to the use of the building, the plaintiff cannot be regarded as having waived his right to enforce simply because he made no objection before the completion of the building. Trustees of Columbia College v. Lynch, 70 N.Y. 440.

There is another aspect of this litigation which the Court has considered. The building being constructed by defendant can readily and without financial strain be converted to a use which would bring it into conformity with the covenants. I make this finding primarily from the testimony of a competent and reliable architect as well as from my own personal observation.

■ The action of the Planning Board in granting a special exception to permit a bar-poolroom in this residential subdivision is a gross example of "spot zoning". It flies directly in the face of enforceable private restrictive covenants as well as denigrating public planning and zoning. I do not feel that it is appropriate for the Board to grant exceptions without considering private use covenants placed on the land. The Board's grant of a special zoning exception should not override the interests of the adjacent and nearby property owners in maintaining their residential community. The Planning Board should confine its discretion in granting exceptions to the zoning scheme where valid, enforceable restrictive covenants do not create a bar to implementing such exceptions.

Defendant has two remaining arguments which should be considered, although I find them to have little merit in law or in equity. He argues that the loan agreement precludes the use of the building for anything but a bar-poolroom. It is true that the construction loan granted by the Small Business Development Agency was for the construction of a bar-poolroom. However, a proper title examination would have red-flagged the restrictive covenant against such proposed use and there is nothing to say that the building cannot now be converted to a permissible use. The remaining argument is that plaintiff Francis has also violated the restrictive covenants by constructing one of the 27 shacks and by applying to the SBDA for a commercial loan to construct a day care center within the residential area. Were the equities of this case wholly between plaintiff Francis and defendant Rios, the "clean hands" doctrine might be applicable, but this case involves a residential community of about two hundred home sites. I can only comment that perhaps plaintiff Francis will have to deal with a more knowledgeable and cautious SBDA

## JUDGMENT

For the reasons stated in the above Opinion, it is hereby adjudged, decreed and declared that Plot No. 42 of the Subdivision of Estate The Glynn, Queen's Quarter, as shown on Subdivision Public Works Drawing, dated March 6, 1963, and registered as PWD No. 1310, St. Croix, Virgin Islands of the United States, is restricted to residential use only by the restrictions placed of public record upon said plot by the original developer, Glynn Garden Estates; and it is further

Decreed, that defendant be and he is hereby permanently enjoined against using the building constructed on said Plot No. 42 as a bar-poolroom or using said building for any trade or business other than private or rental residential use; and it is further

Ordered, that defendant shall pay to plaintiffs towards indemnification for attorneys' fees the sum of $350.00, plus Court costs.