**ROBERT H. DALTON, Plaintiff**

v.

**CAROL KOSICK, Defendant**

Civil No. 75/1987

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 30, 1989

MARSHALL A. BELL, P.C., St. Thomas, V.I., *for plaintiff*

ANDREW CAPDEVILLE, ESQ., St. Thomas, V.I., *for defendant*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

### I. INTRODUCTION

This case concerns a dispute between two land owners in a subdivision of Estate Dorothea, St. Thomas, Virgin Islands. The plaintiff seeks a declaratory judgment stating that certain restrictive covenants of record are valid, enforceable and binding on all owners of property in the subdivision. Plaintiff also asks the court to order the defendant to cease and desist from violating certain of those covenants. The defendant denies any violation and by way of her counterclaim contends that some of the deed's restrictive covenants are invalid and unenforceable, and asks the court to render them null and void. After the hearing on the merits, both parties were afforded the opportunity to submit post-trial briefs which have been considered by the court in this opinion. For the reasons which follow, the court finds some covenants to be valid and enforceable and others to be null and void.

### II. BACKGROUND

The properties in question, Parcel 16F Estate Dorothea, owned by the plaintiff, and Parcel 16G Estate Dorothea, owned by the defendant, are part of a subdivision of residential lots ranging in size from .66 acre to 1.18 acres that were included within a 57-acre tract that the original grantor had envisioned as an exclusive, resort-oriented community, which would include a beach club and restaurant. This resort never came to fruition. The restrictive covenants designated paragraphs "a" through "t" that apply to the

lots in question, were created in 1959 by the original grantors, Kenneth and Betty Tyson, husband and wife, and were intended to complement the resort concept and exclude undesirable activities and so-called undesirables.

The covenants in dispute are: paragraph "b" (prohibiting using your residence as a commercial guest house or for any other commercial purpose including office),[1] paragraph "f" (prohibiting trucks or panelled delivery cars from being kept on the premises),[2] paragraph "l" (prohibiting unpainted roofs),[3] paragraph "p" (giving option of first refusal to grantor or owners in subdivision to buy lots that may be up for sale in the subdivision),[4] paragraph "q" (granting limited bathing rights on Dorothea Beach),[5] and paragraph "r" (prohibiting further subdivision of individual lots).[6]

The plaintiff purchased his parcel from Kenneth and Betty Tyson on April 9, 1965. The defendant, along with her then husband, purchased their residence on January 28, 1982 from Robert and Margaret McCloskey, the original owners and builders of the

---

[1] "No structure other than a one-family residence, together with the customary appurtenances (garage or servants' quarters, if any) shall be erected upon the parcel of land herein described. No such residence or appurtenances shall be used as a commercial guest house or for any other commercial purpose including office. Nothing herein contained shall prevent the owner from renting the residence together with appurtenances as a one-family dwelling …."

[2] "No trucks or panelled delivery cars shall be kept on the premises, and no junked cars or parts thereof, or discarded machinery or debris of any nature shall be kept upon the premises."

[3] "All roofs must be painted and must be painted in a color other than white or aluminum."

[4] "In the event of resale, Sellers retain the option of first refusal of the property at any time prior to the actual closing to a third party, at a price equal to that of a bona fide offer by any third party. In the event of refusal by Sellers the Dorothea Estates property owners shall be given a second chance to purchase the property under the same terms as granted to Sellers. Notice of proposed sale must be given to the Sellers and property owners in writing 30 days in advance."

[5] "Bathing rights only on Dorothea Beach are extended to the Purchasers of each home site, for use by himself and the members of his immediate family and bona fide house guests subject to the Sellers' rules and regulations governing bathing. This shall not include the use of any beach club or facilities that may be constructed in said beach area by the Sellers. Opportunity for membership may be extended to any club which may be erected in the future. Such memberships are not automatically extended nor included in the purchase price of the lots and are at stated rates and subject to all conditions established at the time."

[6] "No lots may be subdivided without written authorization of the Sellers. All acreages purchased must be sold the same size."

residence. Defendant's home consists of a one-family residence, with a small rental apartment, which was built by the previous owners during 1966. The defendant gained sole ownership of this homestead as part of a divorce settlement in August, 1985. At the time the defendant acquired sole ownership, the rental apartment was occupied by a tenant who had rented it from her former husband. The evidence does not reveal that any objections were made by plaintiff or any other subdivision owner during the erection by the original owners of the subject residence with the rental unit, nor is there any evidence of objections when the unit was rented by defendant's former husband.[7]

The defendant and her male friend now share the residence and are also business partners in a mobile repair business. One of the phone numbers of the mobile repair service is the same as their residential phone number, and is painted on the side of the mobile repair vehicle.

It is to prevent the defendant from renting the guest apartment (para. "b"), from performing repair services on the premises (para. "b"), and from keeping panelled delivery cars and trucks on the premises (para. "f") that plaintiff has filed this action. Defendant not only denies these contentions but also challenges their validity as well as the validity of the other covenants cited above (paragraphs "l," "p," "q," and "r"), and contends in the alternative that even if the restrictions were found to be valid, they should be unenforceable because the scheme to establish an exclusive 57-acre resort-oriented community originally envisioned by the grantor has been abandoned.

## III. DISCUSSION

■ The evidence showed that the covenants were for the benefit of the owners in the subdivision. Further, in covenant "t," (not in issue here) the original grantor specifically provided for the covenants to be enforced by owners of the subdivision. Thus, plaintiff has standing to sue. Although the defendant contends that her deed did not contain the covenants, and that she only received a copy of them on the day of the closing, her argument is unpersuasive because the covenants are a matter of public record and they were incorporated into her deed by reference.

---

[7] It appears that plaintiff objected only after defendant, a white female, commenced living, unmarried, with her present companion, a black male.

## A. *LAW REGARDING VALIDITY AND ENFORCEABILITY OF COVENANTS*

The applicable law regarding the validity and enforceability of such covenants are varied and may be summarized as follows:

### 1. *Restrictive Covenants*

■ Covenants affecting real property exist where (1) the grantor and grantee intended the covenant to run with the land; (2) the covenant is one that "touches" or "concerns" the land with which it runs; and (3) there is privity of estate between the party claiming the benefit of the covenant and the right to enforce it, and the party who rests under its burden. Estate Carlton Home and Property Owners Association v. Daas, 16 V.I. 500, 504 (Terr. Ct. 1979).

> The general theory behind the right to enforce restrictive covenants is that the covenants must have been made with or for the benefit of the one seeking to enforce them. The violation of a restrictive covenant creating a negative easement may be restrained at the suit of one whose benefit the restriction was established. ... The rule is well established that where a covenant in a deed provides against certain uses of the property conveyed which may be morious [sic] or offensive to the neighborhood, inhabitants, or those suffering from a breach of such a covenant ... may be afforded relief in equity ....

Neal v. Grapetree Bay Hotels, Inc., 8 V.I. 267, 276 (D.V.I. 1971).

### 2. *Modification of Restrictions*

■■ In the absence of a provision in a deed allowing the changing or eliminating of any restrictions, the same mutuality and formality of instrument is required to vary the restrictions in a subdivision as was required to create them. Est. Carlton Home & Property Owners Association, supra at 507. Further, the willingness of some owners to waive the restrictions is not binding on others who insist on its strict observance. One owner in a subdivision cannot modify the restrictions without the appropriate concurrence of the others. Id.

### 3. *Abandonment and Acquiescence*

■ Abandonment depends upon the conduct by the owners of the benefited land showing an intent to relinquish the benefit of the servitude where the subsequent lot owners substantially violate the

restrictions with community acquiescence. Restatement, Property §§ 504, 558, comments b and c.

■ The doctrine of acquiescence is applicable both to covenants that concern construction of buildings or other permanent improvements upon the restricted property and those concerning the use of property. James v. Roberts, 16 V.I. 272, 279 (Terr. Ct. 1981).

■ Since the acquiescence doctrine rests upon the premise that in many instances no benefit will be derived by enjoining one person while permitting a similar violation of the covenant by another, the acquiescence which defeats enforcement of the restrictions must exist when relief is sought. Restatement of Property § 561, comment c.

### 4. *Public Policy*

In 1981 the Legislature of the Virgin Islands declared the public policy of the Government regarding housing, inter alia, as follows:

> (a) There exists a serious shortage of residential low and moderate income housing in the Territory.
> (b) The lack of low and moderate income housing is injurious to the health, safety and welfare of the people of the Virgin Islands.

> \* \* \*

> (d) The sporadic availability of construction and mortgage money has contributed to the housing shortage ....

21 V.I.C. § 101.

The "serious" shortage of housing has now been termed "critical." See, Bill No. 18-0043, dated April 3, 1989, recommended by the Governor and presently pending in the V.I. Legislature's Committee on Housing, Parks, and Recreation.

Some jurisdictions have held that a developing municipality has the obligation to plan and provide, by its land-use regulations, the reasonable opportunity for an appropriate variety and choice of housing to meet the needs, desires, and resources of all categories of people who may desire to live within its boundaries and may not adopt regulations or policies which thwart or preclude that opportunity. Asian American For Equality v. Koch, 492 N.Y. S.2d 837 (N.Y. App. Div. 1985), Surrich v. Zon. Hear. Bd. of U. Providence Tp., 382 A.2d 105 (Pa. 1977), Southern Burlington County NAACP v. Mt. Laurel, 336 A.2d 713 (N.J. 1975), cert. denied, 423 U.S. 808, 96 S. Ct. 18, 46 L. Ed. 2d 28 (1975).

■ Additionally, it is a settled rule that when construing covenants restricting the use of land all doubts should be resolved in favor of the freer use of property and against restrictions. State v. Door County Bd. of Adjustment, 371 N.W.2d 403, 404 (Wis. Ct. App. 1985); Berger v. State, 364 A.2d 993, 997 (N.J. 1976); Southhampton Civic Club v. Couch, 322 S.W.2d 516, 518 (Tex. 1958). However, that general rule should not be applied in such a way as to defeat the clear intent and plain and unambiguous purpose expressed in the restrictions. Shaver v. Hunter, 626 S.W.2d 574, 575 (C.A. Tex. 1981).

## B. *LAW APPLIED TO COVENANTS "b" AND "f"*

■ The restriction in covenant "b" states, inter alia, "that the one-family residence[8] ... shall not be used as a commercial guest house or ... office." However, the term "single family residence" does not require the premises to be limited to single families comprised exclusively of related members. See, Berger v. State, supra at 998; Town of Durham v. White Enterprises, Inc., 348 A.2d 706, 709 (N.H. 1975). Thus, a servant or guest, though not related, may occupy the dwelling, and restrictive covenant "b" does not prohibit independent quarters for servants or guests. In some jurisdictions, the renting of a room or rooms, if the renting is incidental, is not prohibited by the one-family[9] residence restriction. See, Fayetteville v. Taylor, 353 S.E.2d 29, (Ga. 1987); Berlin Tp. v. Christiansen, 215 A.2d 593, 595 (L.D.N.J. 1975).

Title 21 V.I.C. § 101 takes notice of the serious shortage of residential low and moderate income housing in the territory. Further, it also points out the sporadic availability of construction and mortgage money and that this has contributed to the housing shortage that is prevalent on this island. Restrictive covenants such as the one found in paragraph "b" conflicts with the declared goal of decent housing for each family and exacerbates the already critical housing shortage in these islands. In the case at bar, the renting of the already existing apartment by the defendant does not violate the residential nature of the subdivision. The court takes notice that

[8] A single family dwelling is defined as a detached building designed for or occupied exclusively by one (1) family. 29 V.I.C. § 225(39).

[9] Family is defined as one person or group of two or more persons living together and inter-related by bonds of kinship, marriage, mutual consent, or legal adoption, occupying the whole or part of a dwelling as a separate housekeeping unit with a common set of cooking facilities. The persons thus constituting a family may also include foster children, gratuitous guests, and domestic servants. 29 V.I.C. § 225(45).

it is not a violation of this restriction if the apartment is occupied by servants or guests in whatever numbers or whatever the duration of their stay. However, the plaintiff wishes the court to ignore the public policy and the public need and to find that because there is an exchange of money for the use of the premises, it destroys the residential nature of the subdivision, turns it into a commercial district, and violates the covenant. This the court cannot do under the circumstances of this case.

■ The court finds that the renting of the unit in issue to a nonfamily tenant and charging rent at the reasonable market rate for the apartment is not a violation of the covenant prohibiting a commercial guest house or other commercial purposes, where, as here, the residence was previously erected by others with the existing rental unit, where there was no timely objection by plaintiff or any other property owner, where the apartment was rented for many years without complaint, and where the public policy favors maximum availability and utilization of housing units.

With respect to other commercial activity, the plaintiff testified that he saw defendant's truck leaving the house six or seven times per day but admitted that he never saw any repair work being done on the premises. There is nothing in the record to suggest that the number of times the defendant or her friend exit their home is of any concern of the plaintiff or of any other landowner in the subdivision. Rather, it is reasonable to conclude that the mobile nature of the business would require frequent travel to the places where the repairs were to be done.

■ The testimony further showed that neither the defendant nor her companion does any repair work at the home but they do receive emergency business calls at the home telephone. The court finds that any business related duties, such as bookkeeping, that are performed at defendant's property, are so minimal that they do not destroy the intended purpose of the covenant restricting commercial activity. In Sissel v. Smith, 250 S.E.2d 463 (Ga. 1978) the court upheld the zoning board's decision that the incidental use of a portion of a residence as a beauty parlor would not violate the covenant restricting use of lots in subdivision to "single family residence purposes only" if the beauty shop was operated under conditions specified by the zoning board.

In this case, the intrusion is even less. Here we have no clients visiting the defendant, no repair work is done on the premises of the home, and the related activities (answering phones and book-

keeping) cannot be defined as the type of commercial activity contemplated in the covenant.

Thus, the portion of covenant "b" regarding commercial activities is unenforceable under the circumstances of this case, and although the portion regarding the repair business is enforceable, it has not been violated.

■ Turning to the restriction of covenant "f" regarding the types of vehicles that can be parked at the residence, the record shows that the defendant uses the truck both for personal and business use. Since plaintiff conceded that he did not consider the truck a nuisance nor a violation of covenant "f," this claim has been abandoned and therefore will be considered moot.

## C. *LAW APPLIED TO COVENANTS "l," "p," "q" AND "r"*

The additional covenants before the court are covenant "*l*," prohibiting unpainted roofs; covenant "p," giving option of first refusal to grantor or owners in the subdivision; covenant "q," granting limited bathing rights on Dorothea Beach; and covenant "r," prohibiting further subdivision of individual lots.

The court finds paragraphs "*l*" and "r" to be valid and enforceable but that paragraphs "p" and "q" are unenforceable and contrary to public policy and the law as enunciated in 10 V.I.C. § 1 and 12 V.I.C. § 401.

■ Paragraphs "*l*" and "r" state that all roofs must be painted and must be painted in a color other than white or aluminum (para. "*l*"), and that there shall be no subdivision of lots without authorization (para. "r"). The zoning in this area neither restricts nor requires an owner to paint his roof. Additionally, the zoning permits each lot to be further subdivided because of its size. However, the more stringent restrictions contained in the covenants limiting the size of the lots and the color of the roofs in the subdivision do not violate the zoning laws. These restrictive covenants do not require anything to be done which is forbidden by law, Restatement of Property, § 568, nor are they contrary to public policy. Thus they are both valid and enforceable.

Paragraph "p" provides, inter alia, that in the event of resale, sellers retain the option of first refusal ... and in the event of refusal by sellers, the other property owners shall be given an opportunity to purchase the property. 10 V.I.C. § 3(f) strictly prohibits this kind of option, except in a family relationship and government homestead deeds, and declares any covenant or condition of this type in a deed

231

to be subterfuge, void and of no force whatsoever. This section provides in pertinent part:

> ... any covenant or condition or other provision in such deed, contract, or writing requiring resale back to the seller or to some other particular person, corporation or group or any other special option on the part of the seller, except in family relationship and government homestead deeds, is hereby declared to be subterfuge and also void and of no force whatsoever.

10 V.I.C. § 3(f).

Additionally, paragraph "q" states, inter alia, that "bathing rights on Dorothea Beach are extended to the purchasers ... subject to sellers rules and regulations ... and membership [to a beach club] may be extended ... and subject to all conditions established at the time." This restriction is strikingly similar to one of the covenants regarding the use of the beach that was litigated in McCarthy v. Pelican Beach, Civ. No. 88-37, 1988 St. T. and St. J. Supp. ––– (D.V.I. September 20, 1988). There the court stated:

> [T]he racial and anti-native motivation of these covenants and restrictions is transparent. The use of what a writer of a few decades ago called "weasel words" was unmistakable. ... The highly discriminatory nature of these covenants is beyond question. ... In no small measure, it was the studied aim to promote and preserve enclaves such as is contemplated by these covenants and restrictions that gave birth to the firm expressions of Public Policy trumpeted in 10 V.I.C. section 401. ... To uphold these covenants and restrictions would be a giant step backward in this day and age and would do grievous hurt to the forcefully and unambiguously declared Public Policy of these United States Virgin Islands.

McCarthy v. Pelican Beach, Civ. No. 88-37, 1988 St. T. and St. J. Supp. ––– (D.V.I. September 20, 1988).

The bold discriminatory nature of restrictive covenants "p" and "q" are clearly a means of excluding so-called undesirable purchasers. Such restrictions are totally repugnant, contrary to the laws of the Virgin Islands, and are null and void.

### D. DAMAGES

In his complaint, the plaintiff is seeking damages in the sum of $10,000.00 for diminution in the value of his property. The record is devoid of any evidence to show that plaintiff's property

was devalued, and if so, by how much. "To recover compensatory damages, the fact of damage as well as the amount of damage must be proven. ... The trier of fact is not at liberty to speculate but must be able to find some basis in the evidence for fixing the award." James v. Roberts, supra at 283. The court can find no such basis in the evidence of this case; thus, plaintiff's claim for damages will be denied.

## IV. CONCLUSION

In view of the foregoing, the court concludes that the covenants run with the land and, if violated, are enforceable to the extent that they are not contrary to law and do not violate public policy. The court further concludes that covenant "b" prohibiting the use of the land for commercial purposes is valid but for the reasons stated above it has not been violated by the defendant. With respect to covenant "f" regarding the type of vehicle that may be parked on the premises, plaintiff has abandoned that claim thereby rendering that issue moot. Thus, the court makes no determination at this time of its validity or enforceability.

Additionally, the court concludes that paragraphs "*l*," regarding the painting of roofs, and "r," prohibiting further subdivision of individual lots, must be upheld, but that paragraphs "p," regarding the sellers' retention of an option of first refusal in the event of resale, and "q" extending bathing rights on Dorothea Beach to purchasers of each home site in the subdivision, are of no force or effect and must be declared null and void for being violative of the public policy and laws of the Virgin Islands.

Finally, no damages having been proven by plaintiff, none will be awarded.

Let judgment enter accordingly.

## JUDGMENT

This matter is before the court after trial and after obtaining post-trial briefs from the parties. Plaintiff was represented by his counsel, Marshall A. Bell, Esquire, and defendant was represented by Andrew Capdeville, Esquire.

The court having heard the testimony, and having reviewed the post trial briefs, and the evidence presented, and having entered its Memorandum Opinion containing its Findings of Facts and Conclusions of Law, it is hereby,

ORDERED, ADJUDGED and DECREED, that the challenged covenants in the deeds for the subdivision of Parcel 16 Estate Dorothea, St. Thomas, Virgin Islands are declared to be as follows:

1. Covenant "b" is valid but has not been violated by the defendant.

2. Covenant "f" is dismissed as moot.

3. Covenants "*l*" and "r" are valid and must be upheld.

4. Covenants "p" and "q" are declared null and void.

FURTHER ORDERED, that plaintiff's claim for damages is DISMISSED.