## HAVENSIGHT HILLS ESTATES PROPERTY OWNERS ASSOCIATION, INC., Plaintiff
## v.
## LOU ELLEN BROWN, Defendant

Civ. No. 721/1993

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 23, 1999

RUTH ANN MAGNUSON, ESQ., (Law Offices of Tom Bolt & Associates), St. Thomas, Virgin Islands, *for plaintiff*

CHAD C. MESSIER, ESQ., (Law Offices of Dudley, Topper and Feuerzeig Law House) St. Thomas, Virgin Islands, *for defendant*

SWAN, *Judge*

### MEMORANDUM OPINION

#### Background

Plaintiff, Havensight Hills Estate Property Owners Association, Inc., whose members reside in Estate Bakkeroe in St. Thomas, filed

suit against Defendant Lou Ellen Brown seeking an injunction enjoining Defendant, Lou Ellen Brown, from constructing a three unit structure on her property located at no. 1-61 Estate Bakkeroe, St. Thomas. Plaintiff asserts that the neighborhood in Estate Bakkeroe is zoned R-1 which allows for construction of not more than two dwelling units. 29 V.I.C. 229(c). Defendant has built one residential structure and two apartment units on her lot. Plaintiff further asserts that defendant has violated, and continues to violate, the restrictive covenant in her deed which expressly prohibits defendant from constructing two additional units on her property.

Defendant countered that plaintiff is discriminating against her by filing this lawsuit. Specifically, defendant avers that plaintiff has information and knows of other neighborhood residents who have violated, and are violating, the same zoning law and restrictive covenant by constructing more than two (2) additional units on their lots. Yet, plaintiff has failed to file a similar lawsuit against those violators, as plaintiff has done against this defendant, for the same violation. Defendant further contends that plaintiff has acquiesced in these residents' flagrant violations of the same restrictive covenant and of the same zoning laws. Consequently, defendant asserts that plaintiff is estopped from attempting to prevent her from enjoying the same benefit as the other homeowners in the subdivision. Defendant reminds the court that she is Black and that the other homeowners who are violating the restrictive covenant and zoning laws are all Caucasians, and alleges that this is the sole reason why plaintiff has filed this suit against her, but has not filed suits against the Caucasian violators.

Defendant also raised the issues of plaintiff's complaint being barred by the doctrine of laches and by the doctrine of estoppel. In so doing, defendant contends that plaintiff has waived its right to enforce the covenants and conditions in her deed.

### ANALYSIS

From the parties' pleadings and the evidence in the case, the Court concludes that the defendant's lot is zoned R-1 (Residential low density) and that the deed to defendant's property does have

97

a restrictive covenant, restricting the number of units that may be erected on the lot.

The Court finds that plaintiff has endeavored to be the "watch dog" for the residential development. Plaintiff asserts that it intends to enforce all deed restrictions by legal action, if necessary. The Court finds, however, that plaintiff has dismally failed to initiate any form of legal action against any of the Caucasian violators of the same restrictive covenants. For example, it is common knowledge for many years, and plaintiff has had actual knowledge that the owners of parcels no. 1-41, no. 1-44, and no. 1-51 Estate Bakkeroe have all violated, and continue to violate, the same restrictive covenant that plaintiff accused defendant of violating. But, as of the last hearing date in this case, and of the date of this Memorandum Opinion, plaintiff has failed to file suit or take any legal action against the owners of those properties that are similarly in violation of the zoning laws as defendant.

The Court finds that at the time defendant commenced the construction of the third unit on her property, other property owners were already violating the same restrictive covenant. Importantly, some of the violators of the restrictive covenant were renting their illegal units and deriving a source of income from such renting. Moreover, these units were not being rented surreptitiously. Rather, they were advertised in the leading local newspaper of general circulation in this judicial district. For example, Parcel No. 1-41 had two dwelling units in violation of the restrictive covenant. Both units were being rented for $1,000.00 and $1,200.00 monthly, respectively. The evidence further shows that both parcels nos. 1-44 and 1-51, which are owned by Caucasians, are in violation of the restrictive covenants, since each lot has a minimum of two rental apartments, in addition to the main residence. Two of the homeowners in violation of the covenant were the sister and brother-in-law of one of the former officers of plaintiff's association. Therefore, the Court concludes that plaintiff is "selectively" enforcing the restrictive covenant by not initiating lawsuits against Caucasian residents who violate the covenant, while initiating one against someone who is Black.

Plaintiff asserts that enforcement of the restrictive covenant against defendant is warranted and necessary to "protect the

residents and the neighborhood." But plaintiff cannot seriously contend that its members are damaged by defendant's actions when others are doing the same thing with impunity, or without any efforts by plaintiff to enjoin the same violation of a restrictive covenant by other residents. While plaintiff is uncompromising with defendant for her alleged violations, plaintiff is extremely condescending and timorous when dealing with others who are flagrant violators of the same restrictive covenant. For instance, when one of the plaintiff's representatives approached the owners of parcel 1-44 Estate Bakkeroe and inquired about the number of dwelling units on the premises, one of the owners of that parcel told the representative in no uncertain terms that it was "none of your business as to how many units were on the premises." Plaintiff condones this type of arrogance by its failure to initiate a lawsuit, as it did in this case, against the owners of parcel no. 1-44 Estate Bakkeroe.

Additionally, "[t]he rule is well established that where a covenant in a deed provides against certain uses of the property conveyed . . . those suffering from a breach of such a covenant . . . may be afforded relief in equity upon a showing that the covenant was for their benefit as owners of neighboring properties." *Neal v. Grapetree Bay Hotels, Inc.*, 8 V.I. 267, 276 (D.C.V.I. 1971) citing *Osius v. Barton*, 147 S. 862, 865 (Fla. 1933) However, the rule is not absolute.

Undeniably, plaintiff has a right to seek enforcement of the restrictive covenant. However, the right to enforce a building restriction may be lost by laches or acquiescence in prior violations. *Ellis v. George Ryan Co., Inc.*, 424 N.E.2d 125 (Ind. App. 1981) Likewise, a party who has not acted against a continuous history of non-compliance has either acquiesced to the violation or waived its right to enforce a covenant. *Ellis, supra.* Also, the right to enforce a valid restrictive covenant may be waived by conscious acquiescence in persistent, obvious and widespread violations. *Dierberg v. Wills*, 700 S.W. 2d 461 (Mo. App. 1985).

In certain situations, a restrictive covenant will be deemed invalid and unenforceable. see, *Schindel v. Pelican Beach, Inc.*, 16 V.I. 237 (Terr. Ct. 1979) (Where Court refused to enforce a restrictive covenant because Plaintiff was barred by latches and the doctrine

of relative hardships). An example of the Court's ability to nullify a restrictive covenant is the doctrine of waiver by acquiescence as set forth in *James v. Roberts*, 16 V.I. 272 (Terr. Ct. 1979), citing *Beatty v. Clark*, 11 V.I. 366 (D.V.I. 1975).

Crucially, under the Restatement (First) of Property, Section 561, (1944) the general rule is:

> "Acquiesce by one person in a violation by another of an obligation arising out of a promise respecting the use of land disables one so acquiescing from enforcing by injunction an obligation of like effect against a third person when the acquiescence has the effect of preventing the realization of the benefit sought to be gained by the performance of the obligation attempting to be enforced."

Put more succinctly, "the acquiescence doctrine rests upon the premise that in many instances no benefit will be derived by enjoining one person while permitting a similar violation of the covenant by another. . . ." *James v. Roberts*, 16 V.I. 272, 274 (Terr. Ct. 1979).

Of the two kinds of restrictive covenants, those pertaining to the use of property, and those concerning the construction of buildings or permanent improvements upon the land, the doctrine of acquiescence is *appropo* in the latter, "since breaches of that kind result in permanent changes which cannot easily be corrected." *James*, at 279. Furthermore, waiver results and the restrictive covenant is deemed abandoned, where the conduct of the owners of the benefited land shows "an intent to relinquish the benefit. . . where the subsequent lot owners substantially violate the restrictions with community acquiescence." *Dalton v. Kosick*, 24 V.I. 222, 227-228 (Terr. Ct. 1989); see Restatement of Law, Property §§ 504, 558, comments b and c.

However, the Courts caution that "mere acquiescence to the breach of a restrictive covenant is not in and of itself enough to constitute an abandonment if the restriction remains of value." *Francis v. Rios*, 350 F.supp. 1130 (D.C.I. 1972); *Titus v. Kopacz*, 103 N.W.2d 344 (1960). Under the test set forth in *James v. Roberts*, 16 V.I. 272, 278 (Terr. Ct. 1979). The applicability of the acquiescence doctrine is determined by:

100

1. the extent to which [the] breaches have been permitted;
2. [Similarity in] the Kind of breaches permitted;
3. Physical proximity of the breaches to complainant's property.

In the present case, plaintiff has filed suit seeking to enjoin defendant from constructing a third unit on defendant's property, because the third unit violates the restrictive covenant in defendant's deed, which expressly prohibits defendant from constructing the additional units on her property at 1-61 Estate Bakkeroe. However, the individual owners of the properties located at parcels 1-41 Estate Bakkeroe, 1-44 Estate Bakkeroe and 1-51 Estate Bakkeroe have also constructed more than two additional units on their lots, which constitute direct violations of the same zoning law and restrictive covenant, all with plaintiff's acquiescence.

Under the *James* test, the doctrine of waiver by acquiescence is applicable in the present case, because plaintiff has permitted widespread violations of the same restrictive covenant and zoning law by neighboring property owners in the same subdivision. The violations by other property owners are not unnoticeable or innocuous deviations from the language or wording of the restrictive covenants. Rather, they are flagrant violations caused by the precise conduct which plaintiff stridently complains about in this case. The proximity requirement is satisfied since all of the parcels are located in Havensight Hills Estates Subdivision and fall within the vigilant watch of the Havensight Hills Estates Property Owners Associations, Inc. Despite the same restrictive covenants and zoning law being violated in the exact same manner, Plaintiff has failed to file a similar lawsuit against the other violators.

Lamentably and most lugubriously, it is exceedingly obvious that the only difference between the violating homeowners and this defendant is that they are Caucasians and she is Black.

This Court condemns, denounces, and finds reprehensible plaintiff's selective enforcement of the restrictive covenants along racial lines. Moreover; plaintiff will do itself great service if it heeds the admonition of the Court in *McCarthy v. Pelican Beach*, Civ. No. 88/37, 1988 (D.V.I. September 20, 1988) which states:

"[t]he racial and anti-native motivation of [the selective enforcement of] these covenants and restrictions is transparent . . . [and] to uphold these covenants and restric-

tions would be a giant step backward in this day and age and would do grievous hurt to the forcefully and unambiguously declared public policy of these United States Virgin Islands.

In conclusion, the violations which have been previously allowed by Plaintiff, without protest, are of such magnitude as to divest the restrictive covenant of any force, and render it a nullity.

This is an action in Equity; therefore, the equities of the parties should be considered between the damage to plaintiff and the damage to defendant, if defendant's structure is removed. Because of other flagrant violations to the restrictive covenant by other property owners for which plaintiff has done nothing, the benefit to plaintiff will be minuscule if defendant's structure is removed. How can plaintiff seriously assert that it would be damaged when there are pronounced and perversive violations by other homeowners of the same restrictive covenant that defendant is alleged to have violated? The Court finds that in the subdivision, there is a common practice of violating the restrictive covenant, and plaintiff has acquiesced in the practice.

Plaintiff's conduct of failing to initiate suit against the other landowners for similar violations of the restrictive covenant constitutes a waiver of breach, laches, and acquiescence in Defendant's violation of the covenant. *Ellis v. George Ryan Co., Inc.,* 424 N.E. 2d 125 (Ind. App. 1985); see also, *Seureau v. Tanglewood Homes Association, Inc.* 694 S.W.2d 119 (Tex. App. 14 Dis. 1985) in which the Court opined that to establish an affirmative defense of waiver of a deed restriction, the non-conforming user must prove that the violation then existing reasonably led to the conclusion that the restriction in question had been abandoned and its enforcement waived. Moreover, enforcement of a restrictive covenant for an intentional violation may not be had unless it will result in a significant benefit to the beneficiaries of the covenant. *Gey v. Beck,* 568 A.2d 672 (Pa. Super. 1990).

At trial, defendant advanced another reason for importuning the Court to deny plaintiff's request for injunctive relief. Essentially, plaintiff severely undermined, and irreparably eroded, its position on the restrictive covenant when it agreed and stipulated to entry of a court judgment entered which exempted three other separate

parcels in the subdivision from the same restrictive covenant in this case. These parcels are nos. 1-11, 1-12, and 1-18 Estate Bakkeroe, No. 5 Frenchman's Bay Quarter, St. Thomas, United States Virgin Islands. This Court cannot ignore defendant's exhibit no. 11, which plaintiff's representative, in addition to its attorney, signed, executed and consummated during the pendency of this case. Defendant's exhibit No. 11 is a stipulated agreement which was reduced to a judgment on December 8, 1994, by the same judge in both cases, and recorded on December 22, 1994 at the Office of the Recorder of Deeds on the official records of the relevant lots. (while ex. #11 does not have the Judge's signature, the original copy of the judgment does). Therefore, the Court will take judicial notice of the final judgment in both lawsuits. (Fed. R. Evid. 201) The agreement emanated from two lawsuits that plaintiff filed against Verne A. Hodge and Maude Hodge entitled *Havensight Hills Estate Property Owners Association, Inc., v. Verne Hodge*, Civil No. 187/1993 and *Havensight Hills Estate Property Owners Association, Inc. v. Verne A. Hodge and Maude Hodge*, Civil No. 188/1993. In both cases Plaintiff agreed as follows:

NOW, THEREFORE, the parties stipulate and agree as follow

1. The plaintiff will dismiss its action for debt against the defendants Verne A. Hodge and Maude Hodge *with prejudice*.

2. The plaintiff, any of its successors or assigns, is prohibited from enforcing any provision of the declaration and establishment of rights, conditions, covenants, reservations and restrictions running with the land and filed with the Office of the Recorder of Deeds on November 30, 1987, and is also prohibited from enforcing any subsequent amended covenants and restrictions, as against defendants Verne A. Hodge and Maude Hodge or their property described as Parcel Nos. 1-11, 1-12 and 1-18 Estate Bakkeroe, No. 5, Frenchman's Bay Quarter, St. Thomas, United States Virgin Islands.

3. This Stipulation shall be ordered by the Court and in recordable form, to be recorded in the Office of the

Recorder of Deeds as against Parcel Nos. 1-11, 1-12, and 1-18 Estate Bakkeroe, No. 5 Frenchman's Bay Quarter, St. Thomas, United States Virgin Islands.

4. The defendants Verne A. Hodge and Maude Hodge will dismiss their counterclaim as against the plaintiff, *with prejudice*.

5. That each party shall bear its own expenses and costs.

6. Each party has read this Stipulated Agreement carefully and signs this stipulation freely and willingly.

Undeniably, and irrefutably, plaintiff has agreed in two lawsuits it initiated to exempt three additional lots from enforcement of any present and future covenants, restrictions, and reservations that are located in the same subdivision in which defendant's lot is located.

The Court concludes that given the above exemptions and the flagrant violations of the restrictive covenant by other homeowners, the covenant has lost its effectiveness as a protective device to homeowners in the subdivision.

Plaintiff also argues that it can bring this suit pursuant to V.I. Code Ann. Tit. 29 V.I.C. § 240.[1] This provision of law expressly

---

[1] V.I. Code Ann. Tit. 29 V.I.C. § 240

"The owner or general agent of a building or premises where a violation of any provision of this subchapter has been committed or shall exist, or the lessee or tenant of an entire building or entire premises where such violation has been committed or shall exist, or the general agent, architect, builder, contractor or any other person who commits, takes part or assists in any such violation, or who maintains any building or premises in which any such violation shall exist, shall be guilty of a misdemeanor punishable by a fine of not less than ten dollars ($10.00) and nor more than one hundred dollars ($100.00) for each and every day that such violation continues; but if the offense be found to be willful on conviction thereof, the punishment shall be a fine of not less than one hundred dollars (100.00) or more than two hundred fifty dollars ($250.00) for each and every day that such violation shall continue, or by imprisonment for ten (10) days for each and every day such violation shall continue, or by both, in the discretion of the court.

Any such person who, having been served with an order to remove any violation, shall fail to comply with said order within fifteen (15) days after such service, or shall continue to violate any provision of this subchapter in the respect named in such order, shall also be subject to a civil penalty of two hundred fifty dollars ($250.00). The Commissioner of Planning and Natural Resources, on behalf of the Government of the United States Virgin Islands, or of the owner or occupant of any neighboring property, who is or may be particularly prejudiced by any such violations, may, in addition to the other remedies provided by law, institute injunctions, mandamus, or abatement proceedings, or other

empowers the Commissioner of Planning and Natural Resources ("Commissioner") to bring a lawsuit against any person or legal entity that violates the zoning code. Importantly, section 240 *supra*, authorizes the same Commissioner to initiate legal action in the form of injunction, mandamus, or abatement proceedings on behalf "of the [MC1]owner or occupant of any neighboring property who may be prejudiced by any such violation... to prevent, enjoin, abate, vacate or remove any building erected in violation of the sub-chapter."

The starting point for interpreting a statute is its plain language. *Mansell v. Mansell*, 490 U.S. 581, 588, 109 S.Ct. 2023, 104 L.Ed. 2d 675 (1989). Moreover, where the language of a statute is unambiguous, judicial inquiry is complete, except in rare instances. *Taylor v. Freeland and Kronz*, 938 F.2d 420 (3d Cir. 1991); *Licata v. United States Postal Service*, 33 F.3d 259 (3d Cir. 1994) In this case, the statute is unambiguous, and it empowers the Commissioner to bring suit pursuant to § 240. It is noteworthy that the statute speaks in terms of fines, misdemeanors, and criminal penalty. These subjects are clearly reserved for the Government, and are not the purview of private individuals or entities. Additionally, the statute empowers the Commissioner of Planning and Natural Resources to pursue both criminal and civil remedies in enforcing the zoning laws. The statute does not confer upon private parties the same or similar remedies, or the same right to file a similar lawsuit under § 240 *supra*. There is no language in the statute to suggest that private parties share with the Government the power to sue under this section. Accordingly, plaintiff's purported authority to file suit under this provision is conspicuously absent from section 240 *supra*.

---

appropriate action, to prevent, enjoin, abate, vacate, or remove any building erected or any building or use made or maintained in violation of this subchapter or any regulations hereunder.

In any criminal prosecution under this section, the defendant may plead in abatement that such criminal prosecution is based on a zoning law or regulation which is the subject of a civil action wherein one of the issues is the interpretation of such subchapter or regulation and that the issues in the civil action are such that the prosecution would fail if the civil action results in an interpretation different from that claimed by the Government in the criminal prosecution. The Court before which such prosecution is pending may order such prosecution abated if it finds that the allegations of the plea are true."

Crucially, in other instances where the Virgin Islands Legislature has attempted to afford individuals or private persons the power to enforce a violation of law, the Legislature has explicitly encoded such grant of power into the law by expressed language. (see 11 V.I.C. 1507, 14 V.I.C. 607, 12 V.I.C. 190, and 12 V.I.C. 913)[2] Therefore, whenever the Legislature has contemplated such a right to the individual, it has been expressly granted. However, no such private authorization has been granted to individuals or private parties with respect to the subject matter in section 240.

The plaintiff's conduct graphically illustrates why the power to enjoin violations of the zoning laws should not be entrusted to private parties, such as plaintiff, that selectively enforce the rules to the point of fostering and promoting a discriminatory practice.

Admittedly, plaintiff attempted on three occasions to have the Government of the Virgin Islands, Department of Planning and Natural Resources ("Government") initiate suit against defendant for her alleged violation of the Territory's zone Laws by her erecting a structure in violation of the R-1 zoning restrictions.

---

[2] V.I.Code Ann. Tit. 12 § 190 Enforcement
(a) Injunctive relief
"The Commissioner, or any resident of the United States Virgin Islands, is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation or threatened violation for which the commissioner is authorized to issue a compliance order under section 188 of this chapter. it shall not be necessary to first revoke any permit prior to seeking injunctive relief. Such action shall be brought n the District Court of the Virgin Islands, which court shall have jurisdiction to restrain such violation and to require compliance. Recourse to and exhaustion of the administrative remedies prescribed in section 188 shall not be a condition precedent to enforcement under this section."

§ 607. Civil remedies
"The Attorney General, or any aggrieved person, may institute civil proceedings against any person in the Territorial Court or United States District Court in order to obtain relief from conduct constituting a violation or in order to prevent or restrain a violation of any provision or provisions of section 605 [Violations] of this chapter."

(2) "Any person who has been injured in his business or property, or is threatened with such injury, by a violation of section 1503 of this chapter may maintain an action in the District Court for damages, or for an injunction, or both, against any person who has committed such violation. If, in an action for an injunction, the court issues an injunction, the complainant shall be awarded costs and reasonable attorney's fees."

Enforcement, penalties and judicial review
"(b) Enforcement.
(1) Any person may maintain an action for declaratory and equitable relief to restrain any violation of this chapter."

Specifically, plaintiff's attorneys wrote letters dated January 26, 1994, May 11, 1995, and May 30, 1997 to Former Commissioners of the Department, Roy Adams and Beulah Dalmida Smith, and to Mr. Newton Peters of the Department of Planning and Natural Resources, respectively urging the Government to take action against defendant for violating the zoning laws. However, for whatever inexplicable reason, the Government has not initiated a suit of any kind against defendant for a zoning law violation. (see Plaintiff's exhibits numbers 12, 13 and 14). Again, the letters complain about defendant's violations, but give a deafening silence about other landowners' violations, by failing to mention them.

The Court has reviewed other cases in which a defendant has intentionally violated a restrictive covenant, or is the only party in the subdivision or neighborhood violating the covenant. In these instances, Courts have had no compunction or hesitancy in enjoining the violations, in order to protect other landowners and to make certain that the objectives of the restrictive covenant are honored and accomplished. However, this case presents a different issue. In this case, there are already violations of the restrictive covenant which no one, including plaintiff, ever endeavored to enjoin. Therefore, if defendant is enjoined from utilizing her third unit, such circumscription cannot, and will not, further the objective of the restrictive covenant, because other blatant violations by third parties would continue to exist as are presently the case. The benefit to plaintiff would be minuscule, if at all.

Additionally, such a precedent would condone the discriminatory practice of selective enforcement of restrictive covenants, a practice this court finds to be invidious, and which it abhors.

Turning to the issue of defendant having violated the zoning Law of the Territory, plaintiff is not without a remedy. Rather, plaintiff has an adequate remedy at law. Plaintiff's remedy is specifically encoded in the same section 240 of Title 29 of the Virgin Islands Code, but not in the form Plaintiff desires. Pursuant to section 240 *supra*, any violation of the Territorial Zoning Laws subject the owner to criminal and civil penalties. Specifically, under section 240, an owner of a premises where a violation has been committed, or shall exist, or who maintains any building or

premises in violation of section 228 of Title 29, shall be guilty of a misdemeanor and can be subject to a fine of one hundred dollars ($100.00) a day for each and every day the violation continues; and if the violation is willful, upon conviction can be sentenced to pay a fine of two hundred and fifty dollars ($250.00) for each day the violation continues, and can be incarcerated for ten (10) days for each and every day the violation exists.

In addition, the same section 240 provides for the Government of the Virgin Islands by the Commissioner of Planning and Natural Resources, in addition to any other remedies provided by law, to institute injunction or any other appropriate action to prevent, enjoin, or remove any building erected or maintained in violation of the zoning laws. Specifically, the Government is authorized to initiate these civil suits ". . . on behalf of the owner and occupant of any neighboring property. . . ." Therefore plaintiff, through the Government, has a remedy against any property owner who violates the zoning laws.

If the Commissioner of the Department of Planning and Natural Resources fails to initiate proceedings against the offending property owners, plaintiff can seek mandamus-type relief in this Court, seeking to compel the Commissioner to discharge his statutory duties. see 5 V.I.C. § 1361; *Conner v. Emanuel*, 25 V.I. 31 (Terr. Ct. St. T. and St. J. 1990); and *King v. Mahogany Run Development Corporation*, 23 V.I. 274, (D.C.V.I. 1987) (the Court may grant mandamus-like relief when the plaintiff has a clear right to the relief sought, there is a plainly defined and peremptory duty to do act in question and there is no other adequate remedy available).

## CONCLUSION

Plaintiff has had actual and constructive notice of other violations of the same restrictive covenants. These violations by other landowners serve to undermine and diminish the purpose of the restrictive covenants. Restrictive covenants only have value where there is strict enforcement of them within the same development or subdivision for the benefit of all landowners. Accordingly, to allow discriminatory and selective enforcement of the restrictive covenants, along racial lines, makes a farce of "equal justice" and equal protection of the law.

108

The evidence is compelling that defendant is being singled out for a lawsuit only because she is Black, since other violators of the same restrictive covenant, all Caucasians, have not been sued.

By its acquiescence in other violations of the same restrictive covenant, and by the pervasive practice of violations, the defendant's violation cannot be said to have damaged plaintiff and its membership, since members of plaintiff's organization are doing the same thing on a larger scale. This is a Court of Equity. Under the circumstances, the hardship to defendant of having to demolish her structure for the purpose of safe guarding the neighborhood when the neighborhood already is not being protected against other similar violations, must be looked upon with disfavor.

The Court holds that when a home owners' association files suit against a landowner for violating a restrictive covenant, while the association acquiesces in the same violation, and waives a breach of the same covenant by its failure to initiate suits against other landowners who violate and breach the same covenant, and by the association's written stipulation and agreement to exempt other similarly situated properties from the same restrictive covenant, injunctive relief will not be granted to enjoin the landowner.

Accordingly, plaintiff's request for a permanent injunction and other injunctive relief against Defendant is **DENIED**. Therefore, the Court will enter a companion order of even date.