**Raymond B. BRUEGGEN et al., Appellants,**

v.

**George E. BOEHN et al., etc., Appellees.**

Court of Appeals of Kentucky.

March 10, 1961.

John J. O'Hara, Stephens L. Blakely, Blakely, Moore & Blakely, Covington, for appellants.

Ralph P. Rich, Covington, Harry L. Riggs, Erlanger, for appellees.

MOREMEN, Judge.

Appellants are owners of a retail fruit store known as the Fruit Bowl which is located on Dixie Highway near Erlanger. Immediately next and north of appellants' property, with a common boundary line separating the two, is the Kenton Manor Motel which appellees own. Both parties to this action hold title to their respective lots through mesne conveyances from Kenton Lands, Inc., which was the original developer and subdivider of this area. Each deed contains the following restriction which appellants seek to have enforced:

"Any building constructed thereon shall be erected on a line as a setback seventy-five (75) feet from the highway right-of-way line and no structure or object of any nature shall be erected between said highway right-of-way line and the said setback line herein defined without approval of the subdividers, except in the event of the erection of a filling station, the pumps for same may be forward of the seventy-five (75) foot line hereinbefore stated, but said line shall be observed for any structures."

It will be noted that the restriction creates a setback area of 75 feet from the highway line but it also gives to the subdividers the right to waive or modify the restriction. Appellees' predecessors in title and appellants obtained from the subdividers, Kenton Land Company, Inc., permission to encroach upon the setback area. Both the Fruit Bowl and the Kenton Manor Motel are within 67 feet of the highway. There was also testimony that on this property, and adjacent property, the subdividers gave at least tacit permission to erect a number of signs and even a concrete wall which, however, may have been in the nature of a retaining wall.

In August 1956 appellees placed in front of their motel within the setback area a 38′ x 10′ x 12′ trailer on concrete blocks and it remained there for about one year before it was removed. Thereafter, appellees placed in front of their motel—approximately 15 feet and within the setback area—a concrete foundation or footing which is about 18″ high at the point nearest the highway and about 6″ at the point nearest motel. On this footing appellees propose to place a metal structure to accommodate restaurant facilities. This structure will have these dimensions: Length, 28″; Width, 10″; Heighth, 9′. Such a building when placed on the existing foundation will block the Fruit Bowl from the view of southbound traffic on Dixie Highway until such vehicles arrive immediately in front of it.

Appellees neither sought nor obtained permission of the subdividers to erect this structure. When the previous trailer was used, the Fruit Bowl profit declined.

Appellants sought in the Kenton Circuit Court a judgment enjoining appellees from proceeding with the construction. The trial court stated:

"In the instant case, the subdivider and common grantor, Kenton Lands, Inc., reserves for itself, in the broad language of the restriction, the right to modify or waive the restriction upon application of any lot owners. Whether or not such restrictions might be abrogated, modified or waived, was therefore, left to the will, or even the caprice, of the grantor, Kenton Lands, Inc. The facts conclusively show that the right of the said common grantor to modify the restrictions by permitting structures or objects to be erected within the seventy-five (75) foot setback area was exercised not only in favor of the parties to this action, but also in favor of other grantees of said subdivider, without regard to uniformity. This being true, it is the Opinion of the Court that the restrictive covenant contained in the deeds of conveyance should not, and cannot, be construed as one running with the land for the benefit of the grantees, but rather, must be construed by the Court as being personal in nature, for the benefit of the common grantor. Accordingly, it cannot be found that the plaintiffs herein, as grantees, may maintain this action against defendants, as grantees, to enforce the restriction contained in the instruments of conveyance."

The court refused to grant a permanent injunction, and his refusal seems to be supported by authority. In 19 A.L.R.2d at page 1282, it is said:

"The weight of authority supports the rule that a reservation by the common grantor of a general power to dispense with the restrictions on particular lots negatives the purpose of uniform development from which the mutuality of right among lot owners in a platted subdivision is deemed to arise. Accordingly, where such a power is reserved, one lot owner cannot enforce the restrictions as against another lot owner even though the dispensing power of the common grantor has not been exercised."

We believe the above statement is consonant with general theories which have been applied in cases involving restrictive covenants. In Bagby v. Stewart's Ex'r, Ky., 265 S.W.2d 75, 77, we held that the right of a person not a party to a restrictive covenant to enforce it depends upon the intention of the parties in imposing it, and it must appear that there was an intention to create a servitude or right which should run with the land. This quotation from 26 C.J.S. Deeds § 167 was made:

"Where restrictions are not imposed as a part of a general scheme of improvement, but are for the benefit of land retained by the grantor, the several grantees cannot enforce such restrictions against each other, unless the restrictions were intended for their benefit as well as that of the grantor."

We are unable to read into the covenant, first above quoted in this opinion, an intention to protect anyone other than the subdividers. There is no promise by the grantor to insert similar covenants and restrictions in deeds covering lots in the same subdivision. There is no indication in the express words that it is intended to be a covenant running with the land. When one considers the plat of the immediate neighborhood of the buildings with which we are here concerned it is plain that many minor and some major deviations have been permitted by the subdividers.

We have said that in ascertaining whether a restrictive condition in a deed is inserted for the benefit of the grantor alone or is for the benefit of common grantees (and those who take under them) the intention of the parties is ascertained from the deed itself in the light of surrounding circumstances. McLean v. Thurman, Ky., 273 S.W.2d 825; Anderson v. Henslee, 226 Ky. 465, 11 S.W.2d 154.

In Stanford v. Brooks, Tex.Civ.App., 298 S.W.2d 268, 270, relied upon by appellants, the facts are not the same as those presented here. In that case the dedicator filed in the plat-records of the county the dedication of the subdivision and in the instrument he declared that all lots shown on the map were held and should be conveyed subject to certain restrictions. An important element in the dedication was the dedication of the land to exclusive use for residential purposes which was unreservedly provided. However, in connection with other restrictions the dedicator reserved the right to change building lines, to fix minimum costs of the residences erected and to permit no fences or ornamental structures without written consent of the dedicator. The dedication instrument set out that the restrictions would continue and be binding upon the dedicator and his successors for 25 years, and further provided:

"The restrictions herein set forth shall run with the land and be binding on the Dedicator, his successors and assigns, and all parties claiming by, through or under him shall be taken to hold, agree and covenant with the Dedicator and his successors in title, and with each of them, to conform to and observe all restrictions and covenants."

It was further provided that the dedicator and the owner of any land within the subdivision would have the right to sue for and obtain an injunction to prevent the breach or to enforce the observance of any of the restrictions.

That instrument, however, is quite different from the one we have here because there the grantor was plainly attempting to protect not only himself but also the successors in title to the lots, and the whole plan seems to have originated in the desire to impose restrictions for the common good.

Here the facts seem to be more in accord with the facts in Gibney v. Stockdale Corporation, 20 Del.Ch. 272, 174 A. 117, 119, where the court said:

"We have then a case of so-called development with restrictions which

are imposed for the common good, but in such way that the original owner of it retains the right at all times to wipe out the restrictions in whole or in part according as his or rather its judgment should determine, with not only no covenant on its part to impose the restrictions on later grantees, but reserving the right as to restrictions imposed to release them. Where that is the case the principles applicable to neighborhood schemes in which mutual and reciprocal covenants are binding, have no pertinency."

We believe the chancellor correctly concluded that the restrictions were placed in the deed for the sole benefit of the grantor and were not imposed for the common good of later purchasers.

Judgment affirmed.