# JOHN A. FLEMING, JR., CONRAD D. FLEMING and SANDY POINT PRODUCTS, INC., Appellants

## v.

# ORANGE CRUSH OF PUERTO RICO, INC., Appellee

District Court No. 1993-0186

Territorial Court No. 1991-1104

District Court of the Virgin Islands

Div. of St. Croix

July 11, 1994

VINCENT A. COLIANNI, ESQ., WARREN B. COLE, ESQ., (HUNTER COL-IANNI COLE & TURNER), Christiansted, St. Croix, V.I., *for Appellants*

WILFREDO A. GEIGEL, ESQ., (Wilfredo A. Geigel), Gallows Bay, St. Croix, V.I., *for Appellee*

MOORE, *Chief Judge,* District Court of the Virgin Islands; WATSON, *United States District Judge,* Sitting by Designation; and MEYERS, *Judge,* Territorial Court of the Virgin Islands, St. Thomas and St. John, Sitting by Designation.

## OPINION OF THE COURT

This is an appeal from a Territorial Court order granting summary judgment in favor of appellee. The issue before this Court is whether the trial judge erred as a matter of law by ruling that there was no evidence of a franchise agreement between the parties.

## I. BACKGROUND

Appellants John A. Fleming, Jr. and Conrad D. Fleming ("Flemings") are principals of Sandy Point Products, Inc., a Virgin Islands corporation ("Sandy Point"). Appellee Orange Crush of Puerto Rico, Inc. ("OCPR") is incorporated in Puerto Rico and is a long-standing supplier of "Orange Crush" products.

In its complaint, Sandy Point asserted that it had been a distributor of "Orange Crush" products in the U.S. Virgin Islands since 1946. (App. at 3.) It further alleged that, as of 1976, OCPR agreed to furnish and sell "Orange Crush" products to Sandy Point as its exclusive distributor in the Virgin islands. (Id.; Sandy Point Br. at 7–8.) This action ensued when appellee informed Sandy Point, by letter dated July 15, 1991, that "we have named[] Bellows International our sole distributor, effective August 1st, 1991." (Id. at 115.) Appellants sued OCPR for wrongful termination of a franchise agreement in violation of the Virgin Islands Franchise Act, V.I. Code Ann. tit. 12A, § 130–139 (Equity 1982) ("Franchise Act").

OCPR filed three summary judgment motions beginning in May 1992. The first motion challenged the Flemings' standing to bring

suit. (Id. at 26.) The second motion contended that Sandy Point failed to exhaust its administrative remedies. (Id. at 30.) The third motion was brought under the Franchise Act. (Id. at 131.) On May 18, 1993, the trial court entered an order granting summary judgment because there was no evidence of a franchise agreement between the parties. (Id. at 150–55.) Sandy Point then filed this appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

■■ The District Court of the Virgin islands has appellate jurisdiction pursuant to V.I. Code Ann. tit. 4, § 33 (Butterworth Supp. 1993). Creque v. Roebuck, 16 V.I. 225 (Terr. Ct. 1979). The Territorial Court's grant of summary judgment is subject to plenary review. Public Interest Research of N.J. v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3d Cir. 1990), cert. denied, 111 S. Ct. 1018 (1991); Wheeler v. Towanda Area School Dist., 950 F.2d 128, 129 (3d Cir. 1991).

## III. DISCUSSION

■■ The Franchise Act defines a "franchise" as "a contract or agreement, either expressed or implied, whether oral or written, between two or more persons[] ..."

(a) wherein a commercial relationship of definite duration or continuing indefinite duration is involved;
(b) wherein one person, hereinafter called the "franchisee", is granted the right to offer, sell, and distribute goods or services to the extent that they are manufactured, processed, distributed, or (in the case of services) organized and directed by the other person, hereinafter called the "franchisor";
(c) wherein the franchisee as an independent business constitutes a component of franchisor's distribution system;
(d) wherein the operation of franchisee's business franchise is substantially associated with a franchisor's trademark, service mark, trade name, advertising or other commercial symbol designating the franchisor; and
(e) wherein the operation of franchisee's business is substantially reliant on franchisor for the continued supply of goods or services.

V.I. Code Ann. tit. 12A, § 130(2)(a)–(e) (Equity 1982). Under Virgin Islands law, it is unlawful for a franchisor "to terminate, cancel, or

fail to renew a franchise for any reason whatsoever without having first given written notice of such termination, cancellation, or intent not to renew to the franchisee *at least 120 days in advance of such termination.*" Id. § 131 (emphasis added).

On appeal, Sandy Point asserts that an implied franchise agreement existed between the parties, which was unlawfully cancelled. By letter dated July 15, 1991, OCPR notified Sandy Point that it was making Bellows International its sole distributor effective August 1, 1991. (App. at 115.) Appellants contend that they were not provided with the 120-days notice as required by law.

OCPR argues that there was no franchise agreement between the parties. It asserts that it acted as the agent for Inter-American Orange Crush Company ("Inter-American") which had a franchise agreement to sell products to Sandy Point. In short, OCPR contends that appellants filed suit against the wrong party. The trial court agreed. It found that "[t]here [was] no evidence that even remotely suggests . . . that the parties maintained a relationship of the nature suggested by the plaintiff." (App. at 153.)

The precise nature of the relationship between Sandy Point and OCPR is unclear. It is undisputed, however, that appellants purchased "Orange Crush" products from appellee between 1976 and August, 1991. (See Valdes Dep., App. at 56–57, 60.) OCPR contends that it never gave Sandy Point an exclusive right to distribute "Orange Crush" products in the Virgin Islands. (Id. at 56.) However, there is no dispute that as of August 1, 1991 OCPR discontinued any sales to appellants, (id. at 66–67), and, at that time, began selling its products to another company which it designated as its sole distributor in the Virgin Islands. (Id. at 72; see also id. at 115.)

The relationship between Inter-American and OCPR is similarly unclear. OCPR apparently operated as Inter-American's licensee for production and sales of "Orange Crush" products in Puerto Rico. (Id. at 62.) Sandy Point demanded a copy of the franchise agreement between these two parties; however, it appears that nothing was ever produced. (Id. at 62–63; see also id. at 129, 138–39.)

Sandy Point contends that an implied contract existed between the parties according to which it purchased "Orange Crush" products exclusively from OCPR in exchange for exclusive rights for the distribution of these products on St. Croix. As evidence that the parties' agreement satisfied the elements under the Franchise Act, appellants contend that—

271

(a) the parties had a 15 year uninterrupted relationship;

(b) Sandy Point was granted the right to offer, sell, and distributed "Orange Crush" products;

(c) Sandy Point operated within OCPR's distribution system;

(d) their business was substantially associated with the "Orange Crush" trademark as OCPR supplied decals, point of sale displays, hats and t-shirts bearing the "Orange Crush" logo for display by Sandy Point (see App. at 146);

(e) Sandy Point was reliant on OCPR for approximately 75% of its business (see id.).

OCPR does not deny that Sandy Point purchased products during this time period. It contends, however, that this was due to appellants' agreement with Inter-American and not due to any exclusive distribution rights owned by appellants.

■■ At a minimum, the record on appeal raises a genuine issue whether Sandy Point was OCPR's licensee. The Franchise Act does recognize implied franchise agreements, and it is clear that such contracts may be manifested by the course of dealing between parties. See Matter of Penn Cent. Transp. Co., 831 F.2d 1221, 1228 (3d Cir. 1987) ("[t]he agreement is inferred from the conduct of the parties"). In this case, it is uncontroverted that the parties had a long-standing relationship. This relationship was terminated when OCPR sent Sandy Point a letter notifying it that another company (Bellows International) was to be its sole distributor as of August 1, 1991. Based on the present record, a reasonable jury could conclude that there was a franchise agreement between the parties.

## IV. CONCLUSION

As explained herein, the trial judge erred in granting summary judgment on the grounds that there was no evidence of a franchise agreement between the parties. For this reason, the trial court's order is vacated and the matter is remanded for further proceedings consistent with this opinion. An appropriate order accompanies this opinion.

## ORDER OF THE COURT

AND NOW, after careful review of the record and having considered the submissions and argument of the parties; and for the reasons set forth in the Court's accompanying opinion of even date;

IT IS THEREFORE on this 11th day of July 1994,

ORDERED that the Territorial Court's order granting summary judgment is vacated and the matter is remanded for further proceedings consistent with this Court's opinion.