**ROBERT ROACH and JOSEPHINE ROACH, Appellants**

**v.**

**WEST INDIES INV. CO. and VICTOR C. GOMEZ, Appellees, and RICHARD BOEHM, ROBERT SHANK, MAURICETTE BRIN, MARION GUSTAFSON, RICHARD LAYTON, KAREN LAYTON, and ECLECTIC DEV. CORP., Intervenors-Appellees. ROBERT ROACH and JOSEPHINE ROACH, Appellants, v. FREELAND TRUST, Appellee**

D.C. Civ. App. No. 1995-142

District of the Virgin Islands

Division of St. Croix

March 27, 2000

Susan M. Skinner, Esq., Donovan M. Hamm, Jr., Esq., St. Croix, U.S.V.I., *for Appellants*

H. A. Curt Otto, Esq., St. Croix, U.S.V.I., *for Intervenors-Appellees*

Nancy V. Young, Esq., St. Croix, U.S.V.I., *for Freeland Trust, Appellee*

MOORE, *Judge,* BROTMAN, *Sitting by Designation,* SWAN, *Sitting by Designation.*

**OPINION OF THE COURT**

PER CURIAM

Several decades ago, the West Indies Investment Company

["WIIC"], a now-defunct corporation, developed the Tide Village subdivision in Estate Boetzberg, St. Croix. WIIC included the following covenants in deeds for Estate Boetzberg properties outside of the Tide Village:

> [N]either the Grantee nor his heirs nor his assigns shall or will erect or permit, upon any portion of said premises, any building except a dwelling for one family only; provided, however, that such dwelling may include not more than one of each of the following: (a) Main dwelling house; (b) Guest house[;] (c) Servants' quarters; (d) Attached or detached garage.

> [T]here shall not be manufactured or sold or caused or permitted to be manufactured or sold, upon any portion of the said premises . . . any goods or merchandise of any kind, and there will not be carried on, nor permitted to be carried on, upon any part of the said premises, any trade, or business whatsoever, or boarding house, hotel, hospital or asylum.

(App. at 5-6, 83-84, 417-18.) The deeds also state that "these covenants shall run with the land and shall be construed as real covenants running with the land," and "shall be binding upon the parties to this contract, their respective heirs, executors, administrators, successors and assigns." (*Id.* at 6-7, 84, 418.)

Appellants Robert and Josephine Roach acquired an Estate Boetzberg lot outside of the Tide Village, Plot No. 51, by warranty deed from Victor Gomez ["Gomez"] in 1987. Although the deed of conveyance between Gomez and the appellants incorporated covenants in previous deeds, Mr. and Mrs. Roach did not conduct a title search. (*See* Appellant's Br. at 9.) Instead, they purchased Plot No. 51 with the intent of developing it for commercial purposes based solely on Gomez' representation that the property was "commercial" and the fact that adjacent properties were used for commercial purposes. Gomez said that when he acquired Plot No. 51, WIIC President Sidney Lee ["Lee"] told him that "the property was zoned commercial and that the commercial zoning added to the value of the property." (*See* Gomez aff., *id.* at 30.)

In January, 1992, the appellants applied to the Department of Planning and Natural Resources ["DPNR"] for permits to construct commercial establishments on Plot No. 51, including a gas station, a mini-mart, a laundry, and a 12-unit apartment complex. DPNR promptly issued the requested permits and construction commenced. Several weeks later, landowners Bert Paiewonsky, Richard Boehm, Robert Shank, Mauricette Brin, Marion Gustafson, Richard Layton, Karen Layton, and the Eclectic Development Corporation ["intervenors"] notified DPNR Commissioner Roy Adams of the covenants present in WIIC deeds for lots in Estate Boetzberg outside of the Tide Village, and asked him to revoke the appellants' commercial construction permits.[1] DPNR terminated the appellants' permits in July, 1992, and construction ceased on Plot No. 51.

Mr. and Mrs. Roach then sued the original grantor, WIIC, and their own grantor, Gomez, in the Territorial Court of the Virgin Islands, seeking reformation of the deed of conveyance to eliminate all covenants inconsistent with commercial development of Plot No. 51. (See App. at 1-4 (Compl., Civ. No. 1063/1992).) None of the above-mentioned landowners were named as defendants in this suit. After the named defendants failed to appear, the appellants moved for entry of default. The Territorial Court entered default judgment against WIIC and Gomez in January, 1993, and DPNR subsequently reissued building permits to the appellants.

Once the landowners learned of DPNR's action, they asked the Territorial Court for injunctive relief, and moved to intervene and set aside the default judgment. As the owner of two WIIC-deeded plots in Estate Boetzberg outside the Tide Village, appellee

---

[1] The record shows that intervenor Marion Gustafson owns a WIIC-deeded property in Estate Boetzberg, Plot No. 59, that lies outside of the Tide Village. (*See* App. at 44.) Intervenor Richard Boehm apparently sold his nearby Estate Boetzberg property during these proceedings. (*See id.* at 218-20, 415-16.) Intervenors Robert Shank, Mauricette Brin, Richard Layton, and Karen Layton appear to own properties in the Tide Village. (*See* Appellant's Br. at 107; Appellee's Br. at 19.)

Although the Territorial Court purported to allow intervenors Bert Paiewonsky and Eclectic Development Corporation to withdraw from this case by stipulation on October 12, 1993, and March 27, 1996, respectively, it was without jurisdiction to grant the latter request because the appellants had already filed their Notice of Appeal by that date. Eclectic Development Corporation thus appears as a party to this action in the case caption, but it is unclear whether its property lies outside of the Tide Village.

Freeland Trust instituted a separate suit against the appellants seeking similar relief. In response, the trial court granted a preliminary injunction against further commercial construction on Plot No. 51, and permitted the landowners to intervene and file a counter-claim against the appellants. It also consolidated Freeland Trust's complaint with the appellants' original reformation action.

Thereafter, the parties filed cross-motions for summary judgment, disputing whether the intervenors and Freeland Trust could enforce the restrictive covenants in the deeds crafted by WIIC for Estate Boetzberg properties outside of the Tide Village. The appellants argued that the intervenors and Freeland Trust could not enforce the covenants because, *inter alia*, there was no common scheme of development outside the Tide Village, and the covenants were intended to benefit WIIC alone. *See Freeland Trust v. Roach*, Civ. No. 1063/1992, slip. op. at 10 (Terr. Ct. filed Sept. 14, 1993) [hereinafter *"Freeland Trust I"*]. As support for their contentions, Mr. and Mrs. Roach pointed to paragraph twelve of the original deed of conveyance between WIIC and Gomez, which stated:

> Nothing herein contained shall be construed as restricting, nor shall there be any obligation upon the Grantor, its successors or assigns, to restrict, in any manner, any other premises now or hereafter owned by the grantor.

(*See id.* at 12.) This paragraph also appeared in Marion Gustafson and Freeland Trust's deeds. (*See* App. at 84, 418.) The appellants argued that this paragraph proved that the deed covenants against commercial use or development were not intended to benefit the intervenors or Freeland Trust. Acknowledging that the pivotal question on summary judgment was whether WIIC and Gomez drafted the restrictive covenant in the deed of conveyance solely for their own benefit, the Territorial Court denied the parties' cross-motions for summary judgment because the deed's provisions seemed to create a genuine issue of material fact regarding the intent of the original covenanting parties.

After this ruling, the parties filed cross-motions for relief from judgment under FEDERAL RULE OF CIVIL PROCEDURE 60(b), based on the discovery of new evidence. The appellees also titled their motion as a "Renewed Joint Motion for Summary Judgment." The trial

court denied the parties' Rule 60 motions,[2] but granted the appellee's renewed summary judgment motion based on the newly-submitted affidavit of Sidney Lee, who served as WIIC's President when it first conveyed the lots in Estate Boetzberg. In his affidavit, Lee averred that the

> covenants and restrictions were placed on the properties in order to entice people who wanted a residential neighborhood to purchase the various plots. It was represented to the purchasers that the property would be encumbered for their benefit. . . . It was intended that the homeowners [would] be able to form together to enforce the covenants and restrictions.

(App. at 324.) Although the appellants argued that this affidavit could not remove any bar to summary judgment because it was "but one piece of evidence," see *Freeland Trust II*, slip. op. at 8, the trial court demurred.

> The unrefuted affidavit of Sidney Lee, considered in the absence of evidence to the contrary and read in conjunction with the affidavits already before the Court,[3] is conclusive as to the existence of any factual dispute as to the grantor's intent with regard to the enforceability of the covenants in the Roaches' deed. The fact that the Roaches admit that they are unable to find any evidence on the subject convinces the Court that there is no issue to send to a jury.

*See id.* at 9-10. Judge Cabret denied the appellants' motion for reconsideration on June 14, 1995, and this timely appeal ensued.

---

[2] *See Freeland Trust v. Roach*, Civ. No. 1063/1992, slip. op. at 3-4 (Terr. Ct. filed Mar. 7, 1995) [hereinafter *"Freeland Trust II"*] ("[The trial court's previous] order denying summary judgment to both parties was not dispositive of the litigation and is therefore, not a final order. . . . Rule 60(b) applies only to final determinations and not to interlocutory orders.") (citation omitted).

[3] The trial court referred here to the affidavit of intervenor Richard Boehm, who stated that WIIC assured him when he purchased one of the burdened plots in 1968 that Estate Boetzberg would remain a residential area as a result of the covenants. *See id.* at 9 n.5.

## DISCUSSION

According to the appellants, Gomez' sworn recollection that Lee told him "the property was zoned commercial and that the commercial zoning added to the value of the property" and his subsequent representation to the appellants that Plot No. 51 was "commercial" were proper grounds for reformation of the deed of conveyance. They contend that the trial court ignored paragraph twelve of the original deed to Plot No. 51 and failed to consider the Gomez affidavit or his later statement to the appellants as true in analyzing the appellees' joint summary judgment motion, and thus erred in concluding that no genuine issue of material fact precluded the appellees from enforcing the covenant against commercial development and use of the fee.

The Appellate Division has jurisdiction to hear this appeal from a final order of the Territorial Court under V.I. CODE. ANN. tit. 4, § 33, and exercises plenary review over grants of summary judgment. *See Fleming v. Orange Crush of Puerto Rico, Inc.*, 30 V.I. 268, 270 (D.V.I. 1994). We will vacate the judgment previously entered by the Territorial Court and remand this matter for trial.

Freeland Trust and the intervenors persuaded the Territorial Court that they could enforce the covenant against commercial development present in some of their deeds as well as the appellants' deed against the appellants in equity. Occasionally termed "implied reciprocal negative servitudes," equitable restrictive covenants differ from personal promises concerning land in that they provide some tangible benefit to ("touch and concern") the property, and are intended to be enforced by third parties against landowners with notice of the covenant. *See* RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.03 (1999) [hereinafter "Powell"]; *see also Neal v. Grapetree Bay Hotels, Inc.*, 1971 U.S. Dist. LEXIS 5085, 8 V.I. 267, 276 (D.V.I. 1971) ("The violation of a restrictive covenant creating a negative easement may be restrained at the suit of one for whose benefit the restriction was established irrespective of whether there is privity of estate or contract between the parties, or whether an action at law is maintainable."). *Sanborn v. McLean* was one of the first American cases in which express restrictions on certain lots in a development were enforced as equitable servitudes against purchasers of a

non-burdened lot in the same development. *See* 233 Mich. 227, 206 N.W. 496 (Mich. 1925). In that seminal case, the Supreme Court of Michigan charged the purchasers of the non-burdened lot with constructive notice of the covenant against commercial development in the neighboring landowners' deeds due to the residential nature of the buildings in the subdivision. *See Sanborn*, 206 N.W. at 498.

In this case, the appellants indisputably have constructive notice of the covenant against commercial development incorporated in their own deed, and it is clear that the covenant "touches and concerns" the land. Therefore, the sole point of contention between the parties on summary judgment is whether WIIC contemplated that the covenant could be enforced by individual, neighboring landowners.

■ Any party who seeks to enforce a restrictive covenant through summary judgment must demonstrate that there is no genuine dispute of material fact concerning the covenanting parties' intent to allow them to enforce that covenant. Once the proponent carries this burden, the non-moving party must establish with specific facts that there is a genuine dispute concerning the covenanting parties' intent in order to preclude summary judgment. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

A "genuine" dispute exists when the evidence would allow a reasonable jury to return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-48. The trial court must accept any fact advanced by the non-moving party through admissible affidavits and evidence as true and resolve any doubt in that party's favor. *See Brown v. Vitelcom, Inc.*, 47 F. Supp. 2d 595, 598 (D.V.I. 1999).

The deed between WIIC and Gomez prohibited commercial development or use of Plot No. 51 by "the parties to this contract, their respective heirs, executors, administrators, successors and assigns." (*See* App. at 6-7.) This unambiguous provision is not conclusive as to the parties' intent.

Paragraph twelve of the deed between WIIC and Gomez stated that "nothing herein contained shall be construed as restricting . . . any other premises now or hereafter owned by the grantor."

(*See id.* at 12.) The Trial Division of the District Court has recognized that

> the weight of authority supports the rule that a reservation by the common grantor of a general power to dispense with the restrictions on particular lots negatives the purpose of uniform development from which the mutuality of right among lot owners in a platted subdivision is deemed to arise. . . . [G]enerally, where such a power is reserved, one lot owner cannot enforce the restrictions as against another lot owner even though the dispensing power of the common grantor has not been exercised. *Beatty v. John C. Clark, Inc.,* 1975 U.S. Dist. LEXIS 5576, 11 V.I. 366, 373 (D.V.I. 1975).[4]

Unlike the situation before the District Court in *Beatty,* where the defendant reserved only the right to approve intensive residential construction, WIIC reserved dispensing power over the covenant against commercial use or development. This reservation is evidence from which a jury could conclude that WIIC never really intended to foster uniform residential construction at the Estate Boetzberg development or establish covenants against commercial use or development that grantees could enforce against their neighbors. *See, e.g., Nelle v. Loch Haven Homeowners' Ass'n, Inc.,* 413 So. 2d 28, 29 (Fla. 1982); POWELL, *supra,* at § 60.03.

■ Although the trial court concluded that Lee's affidavit dispelled any doubt concerning the covenanting parties' intent, *see Freeland Trust II,* slip. op. at 9-10, this determination should have been left to the jury. As discussed above, there was admissible evidence on the record to support the appellants' contention that WIIC did not intend to confer the right to enforce the covenant against commercial use and development of Plot No. 51 upon the appellants' neighbors. Indeed, the appellees initially conceded as

---

[4] *See also Graham v. Beermunder,* 93 A.D.2d 254, 462 N.Y.S.2d 231, 235 (1983); *Rodrigue v. La Flamme,* 122 N.H. 966, 453 A.2d 1254, 1257 (N.H. 1982); *Chimney Hill Owners' Ass'n, Inc. v. Antignani,* 136 Vt. 446, 392 A.2d 423, 426 (Vt. 1978); *Suttle v. Bailey,* 68 N.M. 283, 361 P.2d 325, 327 (N.M. 1961); *Brueggen v. Boehn,* 344 S.W.2d 404, 406-07 (Ky. 1961); *Curronor Woods Property Owners' Ass'n v. Driscoll,* 106 Ohio App. 95, 153 N.E.2d 681, 684 n.1 (Ohio 1957); *Maples v. Horton,* 239 N.C. 394, 80 S.E.2d 38, 41 (N.C. 1954); *Bealmear v. Tippett,* 145 Md. 568, 125 A. 806, 808 (Md. 1924).

much.[5] As the trial court impermissibly weighed conflicting, material evidence in granting summary judgment to the appellees, there is no need to examine the residuum of errors alleged by the appellants. We will vacate the judgment below and remand this case for proceedings consistent with this opinion. An appropriate Order shall issue.

DATED this 27th day of March, 2000.

## ORDER OF THE COURT

AND NOW, this 27th day of March, 2000, having carefully reviewed the parties' submissions, and for the reasons set forth in the Appellate Division's accompanying Memorandum opinion of even date, it is hereby

ORDERED that the summary judgment entered by the Territorial Court is VACATED, and this matter REMANDED to that tribunal for proceedings consistent with this opinion.

---

[5] *See Freeland Trust I*, slip. op. at 13 ("Both parties in opposition to the motion for summary judgment . . . insist that the prevailing rule makes clear that a reservation of general dispensing power is but one factor to be considered in determining intent."). The Territorial Court originally denied both parties' motions for summary judgment based on the observation that the language of the appellants' deed was not conclusive with regard to the covenanting parties' intent to allow subsequent grantees to enforce the deed covenants. *See id.* at 14.